[No. 26412.   Department Two.   April 12, 1937.]

Vic Danich, *Appellant,* v. Dave Culjak *et al.,* *Respondents.*[1]

*H. Sylvester Garvin* and *L. B. Donley,* for appellant.
*Rummens & Griffin,* for respondents.

Beals, J.—During the month of October, 1934, Joe and Maria Bouche, the lessees named in a lease from the state of Washington covering certain land in King county supposed to contain coal, executed a sublease of the land to plaintiff, Vic Danich, and defendants, Dave Culjak, Stanley Simich, and Steve Pukich. During the month of February, 1935, these four sublessees entered into a written partnership agreement providing for the development of the property, each contributing five hundred dollars toward a capital fund with which to conduct mining operations.

[1] Reported in 66 P. (2d) 860.

The partnership agreement provided that a majority of the partners might require further equal contributions from the partners; that if one partner should advance more than another, the partnership should be indebted to him for the amount advanced; that the management of the partnership should be vested in a majority of the partners voting in accordance with the amounts of their respective investments; that net profits be divided according to the investments of the partners; that proper books of account should be kept, and that on request each partner should render a true account of his dealings with the partnership; that upon the death or retirement of a partner, no allowance should be made for good will; that any partner working for the partnership should receive wages; each partner also agreeing

" . . . that if he withdraws from the partnership before the mining operations to be carried on by the partnership have reached the gangway or main level of the mine to be operated by the partnership, that the remaining partners shall become the absolute owners of any and all interest which the withdrawing partner may have in the business, and such withdrawing partner shall receive no compensation whatsoever for such interest and he shall have no right to otherwise sell or dispose of his interest."

The agreement did provide, however, that after the mining operations had reached the main gangway or level, any partner could sell his interest.

The following summary is gleaned from plaintiff's testimony: In addition to the initial contribution of five hundred dollars, plaintiff from time to time paid in other sums (aggregating one thousand dollars prior to October, 1935), and during the summer of 1935, worked on the property forty-four days. Plaintiff resided in Aberdeen; the defendants apparently lived on or near the property, and were actively engaged in

the development thereof. Shortly prior to October 22, 1935, defendants requested plaintiff to advance an additional one thousand dollars, whereupon he paid in five hundred dollars, and on or about October 23rd, turned over to defendant Simich an additional three hundred dollars, stating to Simich that he would send the additional two hundred dollars, or would, early in November, go to the mine and perform labor thereon up to that amount. Soon thereafter, plaintiff received a registered letter from defendants' attorney, dated October 24th, advising him that if he did not pay the five hundred dollars within forty-eight hours, his interest in the partnership would be deemed terminated. Before the receipt of this letter, as above stated, plaintiff had paid three hundred dollars of the five hundred dollars demanded.

Plaintiff is an Austrian, and can neither read nor write. After some correspondence between defendants' attorney in Seattle and plaintiff's attorney in Aberdeen, plaintiff was informed by letter, dated November 8th, that he had failed to comply with the demands for contribution, and that his rights in the agreement "are hereby terminated."

Plaintiff thereupon instituted this action, alleging his interest in the partnership property, and that he had contributed $2,300 to the partnership; that the attempted expulsion of plaintiff from the partnership was without right; and that his ownership of an interest in the partnership should be protected. He prayed for dissolution of the partnership, for a sale of the assets, and for an accounting.

The defendants, by answer and cross-complaint, admitted that plaintiff had contributed $2,300 in cash to the partnership, and performed certain labor for the benefit thereof. They admitted that mining operations on the property had been conducted, and that

the interest of plaintiff in the partnership had been forfeited. By way of a cross-complaint, defendants alleged the formation of the partnership for the purpose of developing a coal mine on the property covered by the lease; that the four partners had each contributed five hundred dollars of the initial capital, but that the defendant Pukich had no additional capital; that, at plaintiff's suggestion, it was agreed that the other three partners should in equal shares advance the assessments against Pukich, and that this arrangement was carried out until plaintiff refused to make further advancements; that under the agreement, plaintiff advanced his share of assessments until October, 1935, when he refused to supply further capital; that thereupon, on or about October 24, 1935, defendants made written demand upon plaintiff that he comply with his agreement and pay in the assessments; that plaintiff refused to comply with this demand; and that, pursuant to the terms of the partnership agreement, defendants terminated plaintiff's interest in the partnership, and notified plaintiff of this action in writing November 8th;

"That as of the date of the withdrawal by plaintiff and the termination of his interest in said agreement, the parties hereto had made expenditures in cash, in the development of said mine under said agreement, the sum of $7,851.58;

"That of said sum, the plaintiff had contributed only $2,300, a portion of which, as aforesaid, was the proportionate share of plaintiff in behalf of the defendant Pukich."

Defendants further alleged that, after the "withdrawal" by plaintiff, the mining operations developed coal of a merchantable quality, and that defendants, without any contribution from plaintiff, expended an additional sum of over eight thousand dollars. De-

fendants prayed that plaintiff's action be dismissed and their title quieted against plaintiff.

The action was tried to the court, sitting without a jury, and at the close of plaintiff's evidence defendants challenged the sufficiency thereof, and moved for a nonsuit, which motion the court granted. From a judgment of dismissal following the granting of this motion, plaintiff has appealed.

Error is assigned upon the granting of respondents' motion for dismissal; upon the refusal of the court to order an accounting; and upon the refusal of the court to grant appellant any relief.

Of course, at this time, appellant's testimony, as given on direct and cross-examination, stands unimpeached, and the letters and documents received in evidence speak for themselves. The partnership agreement is long, but the material portions thereof have been hereinabove referred to. The material portion of the vital paragraph has been quoted. By its terms, this portion of the agreement refers only to the "withdrawal" of a partner from the association. It says nothing about the expulsion of a partner, and apparently does not in express terms contemplate involuntary withdrawal or expulsion. For the purposes of this appeal, it may be assumed that the majority of voting strength of the partnership possessed authority to terminate, in some manner, the rights of a recalcitrant associate who refused either to continue contributing to the enterprise or to sever his connection therewith, but apparently respondents relied at all times upon the portion of the agreement above quoted. Their attorney, in his letter of October 24th, directed to appellant, quoted that portion of the agreement as authority for a demand that

". . . the partners be advised within forty-eight (48) hours from receipt of this letter (the date of

which will be fixed by the return United States Postal Registry card) whether you are going to make good your delinquent $500 item and contribute your share with the other partners to the fund necessary to carry on to the 'gangway or main level.'

"If you fail so to do within said period of time, it will be taken for granted that you have withdrawn pursuant the terms of said contract before reaching the 'gangway or main level,' and will thereby have forfeited your interest in this enterprise."

By this letter, respondents asserted their power to take for granted appellant's withdrawal from the association.

In his letter of November 8th, above referred to, respondents' counsel wrote appellant:

"Inasmuch as you have failed, refused and neglected to comply with the agreement of Feb. 15, 1935, heretofore referred to in our correspondence, and refused to follow the suggestions of our letter of October 24, 1935, that pursuant the terms of said agreement of February 15, 1935, all your interest in said agreement and rights thereunder are hereby terminated and the partners aforesaid, whom we represent, pursuant said agreement, 'become the absolute owners of any and all interest which the withdrawing partners (you) have in the business.' You may govern yourself accordingly."

It therefore clearly appears that respondents, in excluding appellant from the partnership and appropriating to their advantage his investment therein, assumed appellant's withdrawal from the association, and arrogated to themselves authority to sever appellant's connection with the business and declare a forfeiture of his interest therein.

Appellant's attorney, under date October 25th, wrote respondents' counsel, stating that appellant, on October 23rd, had paid three hundred dollars, and that he would go to work on the mine about November

1st. The following day, respondents' counsel answered this letter, reiterating the stand taken in the letter of October 24th, and adding:

"Unless Mr. Danich complies with the contract, in the particular of advancements, the position of our clients is that he is through. Our clients desire that he continue with them and cooperate but the option is his."

October 30th, respondents' counsel wrote his client, Mr. Culjak, informing him of the substance of the letter received from appellant's counsel, and suggesting that the parties get together informally and come to some agreement. A copy of this letter was forwarded to appellant's counsel. October 29th, appellant's attorney wrote to respondents' counsel, stating that appellant claimed that he had complied with all demands for the payment of money, save as to two hundred dollars, which appellant proposed to work out. Appellant testified that about November 1st, he was taken sick with what he described as "chicken measles," and was confined to his bed for several days; that upon his recovery he was preparing to go to the mine to carry out his agreement, when he was advised by respondents' counsel, as above set forth, that his interest in the mine had been terminated.

Appellant was not a practical coal miner. When he was informed sometime prior to October 23rd that respondents, in their operations, had reached a vein of inferior coal, appellant took the position that this coal should be mined as a commercial proposition. He testified frankly that, when this vein was reached, he considered that he "was through." Doubtless, the vein which was first reached contained coal of an inferior quality, which could not be profitably mined, and appellant was wrong in his opinion that mining operations should be commenced. Evidently, how-

ever, appellant yielded his opinion to the better judgment of respondents, and thereafter actually advanced eight hundred dollars more money for the purpose of seeking coal of a better quality. This certainly indicated that appellant was willing to continue to bear his share of the burden of further operations. His acts speak louder than his words, and this appeal must be determined upon what was actually done.

Respondents' counsel, in the letters which he wrote, clearly stated respondents' position, and the rights of the parties must be determined as shown by the record before us as of November 8th, the date respondents sought to terminate appellant's interest in the partnership. Subsequent expenditures by respondents, as pleaded in their answer, cannot be considered on this appeal.

Appellant's testimony indicates that he is in many respects ignorant, and while his testimony contains some discrepancies, it may well be contended that these are due to misunderstandings on his part, and not to any deliberate intention to testify falsely. While a court may not be bound to believe an interested witness, who is in some respects discredited, even when such testimony is the only testimony in the case, we do not find anything which justifies the court in disregarding the material portions of appellant's story.

Respondents admit that appellant had contributed $2,300, and that he paid in $800 late in October, after his complaint concerning the mining operations, and practically as appellant testified he did contribute the same. Appellant's testimony that he fell sick about the first of November stands unimpeached. Referring to this testimony, the trial court suggested that there was some doubt in his mind as to what effect upon the situation this sickness had, but did not indicate

that he disbelieved appellant's testimony that such an illness occurred.

██ The relation existing between copartners is one requiring the exercise of the utmost good faith. Each partner is a trustee for all, and no individual or group may take an unconscionable advantage of another. *Salhinger v. Salhinger,* 56 Wash. 134, 105 Pac. 236; *Kittilsby v. Vevelstad,* 103 Wash. 126, 173 Pac. 744. The law does not favor forfeitures, and equity will not permit a forfeiture, unless the facts clearly require such action. Respondents, while protesting that they did not want appellant to withdraw from the association, within a few days after he had paid in eight hundred dollars, took it "for granted" that he had withdrawn within the terms of the contract, and assumed to terminate all appellant's rights in the partnership and to appropriate his contributions to their advantage. Appellant testified that, on or about October 18th, he paid five hundred dollars, and that on October 23rd, he had a conversation with Mr. Simich, one of respondents, and then turned over to him three hundred dollars additional, leaving only two hundred dollars due; testifying further that at the same time Mr. Simich suggested that he go down and work in the mine, to which appellant agreed. Evidently, the letter written by respondents' counsel under date October 24th was written in ignorance of the fact that appellant had paid three hundred dollars. The receipt of this peremptory demand would naturally cause appellant to consult his attorney, and the illness to which appellant testified caused further delay, followed by the receipt of the letter of November 8th.

From the testimony, it appears beyond question that appellant did not voluntarily withdraw from the partnership. On the other hand, we are convinced that the record shows no sufficient basis for respond-

ents' assumption that appellant had withdrawn and their purported termination of his interest in the venture. At the time respondents assumed to terminate appellant's rights, no sufficient basis existed for such action.

The judgment appealed from is accordingly reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

STEINERT, C. J., TOLMAN, HOLCOMB, and ROBINSON, JJ., concur.