[No. 29317.   Department Two.   July 6, 1944.]

JOHN HATUPIN, *Respondent*, v. WM. S. D. SMITH *et al.*, *Appellants.*[1]

[1]Reported in 150 P. (2d) 675.

*Padden & Moriarty, Melvin T. Swanson,* and *Frederick J. Lordan,* for appellant.

*Geo. H. Crandell* and *Rummens & Griffin,* for respondent.

BLAKE, J.—Though buried in a record which is overburdened with evidence on collateral matters and which is replete with innuendo, charge, and countercharge, the controlling facts in this controversy are quite simple and not much in dispute.

One Emil Pohl owned a second mortgage on property in Seattle known as the Alvena Vista apartments. August 11, 1938, he deposited the mortgage, with an assignment of it and the note which it secured, with Lawyers & Realtors Title Insurance Company under the following directions:

"You are authorized and directed to deliver said instruments . . . to John Hatupin or order, upon payment to you for my account of the sum of $500.00.

"Upon delivery of said papers you are authorized to insert in the Assignment of said Note endorsed thereon, the name of such assignee as John Hatupin may instruct; and you are also authorized to insert in said Assignment of Mortgage such name of assignee as John Hatupin may direct in writing.

"If you are unable to comply with these instructions within THIRTY DAYS, said items are to be returned to me on written demand. . . ."

On August 26th the defendant Smith paid five hundred dollars to Lawyers & Realtors Title Insurance Company for Pohl's account. At plaintiff Hatupin's direction, the title insurance company inserted the name of Smith as assignee of the note and mortgage. Smith and Hatupin executed the following instrument which forms the basis of this suit:

"MEMORANDUM OF PARTNERSHIP IN RE FORECLOSURE OF 2ND MORTGAGE AGAINST H. C. JOHNSON

"THIS AGREEMENT, made at Seattle, Washington, this 31st day of August, 1938, by and between W. S. D. SMITH, as first party, and JOHN HATUPIN, as second party, WITNESSETH:

"That in consideration of the equal contribution by the parties hereto to the within venture, the parties hereto agree that they each shall participate equally, share and share

alike in any profits, and each shall bear one-half of any losses or liabilities in connection with this venture which shall be limited to the acquiring of the Alvena Vista Apartments, and any other property acquired in connection with collection of any deficiency judgment resulting from the foreclosure of the second mortgage on said Alvena Vista Apartments.

"IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals the day and year first above written.

"W. S. D. SMITH—First Party
"J. HATUPIN—Second Party

"WITNESS:
"H. T. FITCH"

Shortly after the execution of this agreement, Smith started foreclosure proceedings, which were consummated late in 1938. He went into possession of the property and has operated it ever since.

The venture has proved highly successful. Rent returns up to the time of trial of this action amounted to $30,325.88. Of this, $19,908.80 has been applied to principal and interest on a first mortgage, which, as of August 31, 1938, amounted approximately to $32,000. Other charges against the property up to the time of trial amounted to $17,057.38, making a total of $36,966.18, so that the excess of expenditures over rental to that time amounted to $6,640.30. It is to be noted, however, that in less than five years the equity in the property had increased to the extent that the payments of $19,908.80 had been applied on the principal amount of the first mortgage. Hatupin did not contribute, nor was he called upon by Smith to contribute, any part of the excess of expenditures over receipts. In this connection we may say that we think it is a fair inference that the enterprise was conceived and entered into upon the theory that the property would carry itself and the load of the first mortgage.

Whether and when Smith repudiated the agreement of August 31, 1938, with Hatupin is a matter of dispute. That, however, we think, is a minor issue and has no substantial bearing upon their respective rights and obligations under that agreement. In any event, Hatupin, conceiving that

the instrument created a partnership, as it expressly purports to do, brought this action for dissolution, accounting, and distribution of partnership assets. By way of affirmative defenses, Smith pleaded the statute of limitations, and alleged that Hatupin was acting as a real estate broker in the transaction and that he had no license to act as such.

The court entered a decree of dissolution of the partnership, ordered the sale of the partnership property (the Alvena Vista apartments and furnishings), and equal division of the proceeds of sale after payment of certain obligations. Defendant Smith appeals.

■ Appellant contends that the agreement is not sufficient to create a partnership. We think the contention is without substance. The express intention of the parties was to create a partnership, and they agreed to share such profits and bear such losses as might attend the venture. This is quite sufficient under our decisions to establish a relation of partnership between the parties. *Causten v. Barnette,* 49 Wash. 659, 96 Pac. 225; *Yatsuyanagi v. Shimamura,* 59 Wash. 24, 109 Pac. 282; *Nicholson v. Kilbury,* 83 Wash. 196, 145 Pac. 189; *Danich v. Culjak,* 190 Wash. 79, 66 P. (2d) 860; *Constanti v. Barovic,* 199 Wash. 117, 90 P. (2d) 724; *Stipcich v. Marinovich,* 13 Wn. (2d) 155, 124 P. (2d) 215; *Fields v. Andrus,* 20 Wn. (2d) 452, 148 P. (2d) 313.

■ Appellant also contends that the contract was executory. The contention is untenable. Respondent either owned or had an option on the Pohl mortgage. Obviously, the agreement of August 31st was the culmination of a sale by respondent to appellant of a half interest in the mortgage upon payment by the latter of the balance of five hundred dollars due Pohl. The agreement rested upon a present substantial consideration. Notwithstanding partnership duties and obligations were to be performed in the future, the agreement was in no sense executory.

■ Appellant further contends that, since the agreement provided for no fixed period of duration, the partnership was terminable at the will of either partner; that he terminated it in 1939. Hatupin denies the latter assertion; and

we think appellant's own testimony refutes it. He testified that he signed the instrument without reading it, did not know its contents, and that he considered the property his own from the beginning. (Of course, his failure to read the instrument and his ignorance of its contents make it nonetheless binding. *Hubenthal v. Spokane & I. R. Co.,* 43 Wash. 677, 86 Pac. 955.) The argument that he terminated a partnership the existence of which he professed to be ignorant, is not convincing. Hatupin testified that, whenever he broached the subject, Smith put him off with one excuse or another. In the light of this testimony, we think appellant's defense of laches is also without merit.

Likewise, appellant's contention based on the theory that Hatupin was acting as a real estate broker is without merit. He was dealing with his own property or property the disposal of which he held control for a period of thirty days from August 11th. There is nothing in the record to justify the inference that he was acting as agent for Pohl. In any event, the transaction did not involve the sale of an interest in real estate, for the mortgage itself constituted a security merely for the debt evidenced by the note. It created no estate in the real property described. *Dane v. Daniel,* 23 Wash. 379, 63 Pac. 268; *Gerber v. Heath,* 92 Wash. 519, 159 Pac. 691.

Finally, appellant contends that it would be inequitable to permit respondent to assert any rights under the agreement after standing by for more than four years and allowing him (appellant) to assume all the risk of failure of the venture.

As we understand the record, appellant assumed no different nor any greater risk from that of respondent. While the latter put up no money for expenses, he was liable under the terms of the agreement for one half of any losses that might attend the venture. We can find nothing in the record to indicate that appellant assumed any personal obligation to the holder of the first mortgage. He simply took over the property subject to the first mortgage and such other liens as stood against it. He was free to withdraw from the enterprise at any time, subject to his

liability for obligations incurred in connection with the enterprise. If losses had been sustained, he would have had recourse for half of them against Hatupin.

If equities are to have any bearing on the decision, we think they were all with respondent. He owned or controlled the second mortgage, which was the foundation of the venture. For five hundred dollars he let appellant in on an equity in property which was producing an income practically sufficient to carry itself. To our minds it would be highly inequitable now to let appellant freeze respondent out.

Decree affirmed.

SIMPSON, C. J., MILLARD, ROBINSON, and MALLERY, JJ., concur.

