121 P.3d 106 (2005)
CURLEY ELECTRIC, INC., a Washington corporation, Plaintiff,
v.
Joseph BILLS and Jane Doe Bills husband and wife, individually and the marital community composed thereof, Respondents,
C K International Corporation, a Washington corporation; and the Pike Street Corporation, a Washington corporation, Defendants/Cross-Defendants.
Pike Street Corporation, Third Party Plaintiff,
v.
Clubland, Inc., a Washington corporation, Third Party Defendants.
James Teply, Respondent.
SUNSH9, LLC, Appellant.
No. 55408-5-I.
Court of Appeals of Washington, Division 1.
October 17, 2005.
*107 Patrick F. Hussey, Anderson Hunter Law Firm PS, Everett, WA, for Appellant.
Joseph Bills (Appearing Pro Se), Tarl Raud Oliason, McKisson Sargent & Oliason PS, Jane Doe Bills (Appearing Pro Se), Seattle, WA, for Respondents.
Tarl Raud Oliason, McKisson Sargent & Oliason PS, Seattle, WA, for Respondent Intervenor.
GROSSE, J.
¶ 1 With respect to real estate, under the Revised Uniform Partnership Act (RUPA) the question of whether the owners intend to form a partnership is one of fact. The burden of proving the existence of a partnership rests on the party alleging it and its existence depends on the intention of the parties and the totality of the circumstances. Here, after a hearing on contested evidence, the trial court determined that Joseph Bills and James Teply entered into a partnership with respect to their real estate. We affirm.

FACTS
¶ 2 On July 8, 1992, Joseph Bills and James Teply executed a partnership agreement for the purpose of purchasing and holding real estate. "The purpose of the Partnership shall be to acquire, own, develop, mortgage, lease, sell, or otherwise dispose of land . . . to finance and construct or cause to be constructed improvements thereon, and to do anything necessary or incidental to the foregoing." Pursuant to this agreement, the partners acquired residential property in Seattle as "co-partners" by quit claim deed. The deed was recorded in July 1992. Under the terms of the partnership agreement, Teply loaned funds to Bills to cover Bills' capital *108 contribution in the partnership. The agreement set forth that profits and losses of the partnership and any distributions therefrom were to be allocated according to their percentage of ownership, each initially having a 50 percent share.
¶ 3 In August 1994, Bills and Teply executed an amendment to the partnership agreement, restating the partnership interest in the Seattle property and adding a second property located in Mountlake Terrace to the partnership under the same stated purpose.
¶ 4 In May 2000, a judgment was entered against Clubland, Inc. and Joseph Bills. The judgment was filed with the King County Auditor on May 26, 2000. Three years later, through a series of assignments, SUNSH9, LLC. became the holder of the judgment. SUNSH9 sought to execute against the Seattle residential property pursuant to its belief that the property was not a partnership asset, but property co-owned by Bills. A Writ of Execution issued against the interest of Bills in the Seattle property and SUNSH9 sought an order directing the execution of Bills' interest therein. The court entered an Order Directing Sale of Homestead Property. SUNSH9 sought to modify the order directing sale of property to remove the homestead designation. Before the hearing on that motion, Teply requested and was granted leave to intervene. At the hearing, Teply and Bills asserted, through separate counsel, that they were co-partners under the 1992 partnership agreement, and that the partnership owned the Seattle property. Thus, they claimed the property was not subject to execution as Bills' separate property. In turn, SUNSH9 sought the court's determination that the Seattle property was not partnership property, contesting whether the partnership was formed for a business purpose or for profit. The trial court orally denied SUNSH9's motion, and determined that the Seattle property was a partnership asset. The court entered the Supplemental Order on Motion to Modify Order Directing Sale of Property, finding that it was unnecessary to determine whether or not the two individuals validly created a partnership entity for the sole purpose of placing their residential property in a partnership because the co-partners acquired additional real property and amended their partnership agreement to include both properties as partnership assets. Therefore, the court determined the Seattle residential property was a partnership asset at the time the judgment was taken, and Bills did not have an individual co-ownership interest which could be reached by execution of the judgment lien. SUNSH9 sought reconsideration, which was denied. SUNSH9 appeals.

ANALYSIS
¶ 5 Under the Revised Uniform Partnership Act, a partnership is "created whenever two or more persons agree to carry on a business and share in profits and ownership control."[1] "A partnership is an entity distinct from its partners[2] and [may be] formed regardless of whether the persons entering into the agreement intend to form the partnership entity."[3]
¶ 6 A partnership is often created by execution of an instrument that shows the "express intention of the parties was to create a partnership, and they agreed to share such profits and bear such losses as might attend the venture."[4] Long-standing decisions have held that this intent is sufficient to establish a relation of partnership between parties.[5] Here, it is clear that Bills and *109 Teply intended to create a partnership by execution of an express written partnership agreement.[6]
¶ 7 SUNSH9 relies on RCW 25.05.055(3)(a) arguing that the statute requires a showing of some active carrying on of business as set apart from the passive co-ownership of property, especially where, as here, the property is also used as a residence. But "it is not essential to the existence of a partnership that business have actually been carried on. An agreement to carry it on creates the partnership. . . ."[7] "Disputes over the existence of a partnership are rarely resolved by finding that there is no `business,' for the term is expansively defined to include `every trade, occupation, or profession.'"[8] Bills and Teply's 1992 partnership agreement states that the purpose of the partnership "shall be to acquire, own, develop, mortgage, lease, sell or otherwise dispose of land located at . . . Seattle, King County, Washington, to finance and construct or cause to be constructed improvements thereon, and to do anything necessary or incidental to the foregoing." There is no dispute that this may be a legitimate business purpose.
¶ 8 SUNSH9 makes much of the fact that the partners have passive co-ownership in real property in which they reside, and that this is not the carrying on of a business. Contrary to SUNSH9's argument, RCW 25.05.055(3)(a) does not state that "passive co-ownership [of property] does not `by itself establish a partnership,' even if the co-owners share profits made by the use of the property."[9] The statute sets forth only that a "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by use of the property."[10] Here, there was more than one of the listed tenancies, there was an express written partnership agreement and the property was taken as "co-partners." With regard to the determination of whether a partnership was formed, the statute is appropriately silent regarding property formally held as co-partners and does not say that property held as a partnership asset by co-partners under a partnership agreement for investment and eventual profit does not establish a partnership. The statute speaks to the ownership of real property where a determination must be made as to the existence of a partnership because an agreement is absent. RCW 25.05.055(3) should not be read in conjunction with partnerships that have express partnership agreements. There is nothing in the Act to prevent the holding of real estate for the business purpose of gaining a profit at a later time, if that is what is intended and contemplated under the partnership agreement.
¶ 9 Further, RCW 25.05.065 describes when property is partnership property:
(1) Property is partnership property if acquired in the name of:
(a) The partnership; or
(b) One or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership, whether or not there is an indication of the name of the partnership.
. . . .

*110 (3) Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or the existence of a partnership.
¶ 10 In this case, the Seattle property was acquired not in a partnership name, but in the name of both partners, in the capacity of co-partners. This was indicated on the deed, thus qualifying as partnership property under RCW 25.05.065(1)(b).
¶ 11 As noted above, the burden of proving the existence of a partnership rests on the party alleging the partnership,[11] and the trial court's determination that Bills and Teply entered into a partnership with respect to the properties will not be set aside unless this court finds that it is contrary to the preponderance of the evidence.[12]
¶ 12 Here, the record, while somewhat minimal, supports the determination that Bills and Teply entered into a business relationship to invest in real estate under their partnership agreement. In 1992, pursuant to the written partnership agreement, Bills and Teply purchased and held the Seattle property in the capacity of co-partners. Two years later, the partners purchased the Mountlake Terrace property amending the partnership agreement to add the second property and also restating the business purpose of the partnership, including the Seattle property. The Mountlake Terrace property is held as a rental property. No evidence or claim has been made that the partnership agreement was entered into for fraudulent reasons or that the partnership was created as a sham.
¶ 13 While additional evidence regarding the ongoing business purpose might have been desirable in this case, under the circumstances, the evidence preponderates for the determination reached by the trial court that a partnership existed for a business purpose, with the properties as partnership assets.
¶ 14 In its reply brief, SUNSH9 asserts that the property was not purchased with partnership funds already in existence. While partnership assets can be purchased with existing partnership funds, there is no requirement that partnership property must be so purchased. Again, the character of the property is determined by the understanding and intent of the partners at the time the partnership is created.[13] Contrary to the claim of SUNSH9, the property was acquired with partnership assets; to wit, the initial capital contributions of the two partners, even though one of those contributions was through use of a promissory note.
¶ 15 Under RCW 25.05.060, "[p]roperty acquired by a partnership is property of the partnership and not of the partners individually." Whether a co-partner is liable for obligations of the other depends on whether a wrong was committed within the scope of partnership agency or within the reasonable scope of the business of the partnership.[14] In order to bind the partners or the partnership, the obligation must be within the scope of the partnership business.[15] There has never been a claim that Bills or Clubland, Inc. acted on behalf of the partnership when it incurred the debt that was eventually reduced to judgment.
¶ 16 The decision of the trial court is affirmed.
WE CONCUR: ELLINGTON and COLEMAN, JJ.
NOTES
[1] 1B Kelly Kunsch, Washington Practice: Methods of Practice § 67.2, at 37 (4th ed. Supp.2005) (citing Laws of 1998, ch. 103, §§ 202(1) & (2)); RCW 25.05.055(1).
[2] 1B Kunsch, Methods of Practice § 67.2, at 37 (4th ed. Supp.2005) (citing Laws of 1998, ch. 103, § 201(1)).
[3] 1B Kunsch, Methods of Practice § 67.2, at 37 (4th ed. Supp.2005) (citing Laws of 1998, ch. 103, § 202(1)); RCW 25.05.055(1).
[4] Hatupin v. Smith, 21 Wash.2d 132, 135, 150 P.2d 675 (1944).
[5] Hatupin, 21 Wash.2d at 135, 150 P.2d 675 (citing Causten v. Barnette, 49 Wash. 659, 96 P. 225 (1908); Yatsuyanagi v. Shimamura, 59 Wash. 24, 109 P. 282 (1910); Nicholson v. Kilbury, 83 Wash. 196, 145 P. 189 (1915); Danich v. Culjak, 190 Wash. 79, 66 P.2d 860 (1937); Constanti v. Barovic, 199 Wash. 117, 90 P.2d 724 (1939); Stipcich v. Marinovich, 13 Wash.2d 155, 124 P.2d 215 (1942); Fields v. Andrus, 20 Wash.2d 452, 148 P.2d 313 (1944)).
[6] A review of case law reveals that most of the cases dealing with the formation of partnerships deal with circumstances that do not have the benefit of an express written agreement.
[7] Judson A. Crane & Alan R. Bromberg, Law of Partnership, ch. 2, § 12(a), p. 59 (1968).
[8] Crane & Bromberg, Law of Partnership, ch. 2, § 12(a), p. 57 (1968); see also RCW 25.05.005(1).
[9] The argument that "passive co-ownership of property by itself does not establish a partnership" refers to the official comments of the Revised Uniform Partnership Act (RUPA). The comment notes that section 202(c)(1) of the RUPA, the corresponding subsection to RCW 25.05.055(3), "makes clear, passive co-ownership of property by itself, as distinguished from the carrying on of a business, does not establish a partnership." See Official Comment to the Revised Uniform Partnership Act, Robert W. Hillman, Allan W. Festel and Donald J. Weidner, The Revised Uniform Partnership Act § 202 "Formation of Partnership," (Treatise) Official Comment No. 1 (2004 ed.).
[10] RCW 25.05.055(3)(a).
[11] Eder v. Reddick, 46 Wash.2d 41, 49, 278 P.2d 361 (1955).
[12] Minder v. Gurley, 37 Wash.2d 123, 131, 222 P.2d 185 (1950).
[13] In re Fair Oaks, Ltd., 168 B.R. 397 (B.A.P. 9th Cir.1994).
[14] See Seafirst Ctr. Ltd. P'ship v. Erickson, 127 Wash.2d 355, 360-62, 898 P.2d 299 (1995).
[15] Barnes v. McLendon, 128 Wash.2d 563, 573, 910 P.2d 469 (1996).