IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SUSAN J. HANSON, an individual, BARBARA J. COSGROVE as Trustee of the Trust for Quinn W. Cosgrove Trust, BARBARA J. COSGROVE as Trustee for the Trust of Megan M. Cosgrove, | No. 86672-9-I |
| | DIVISION ONE |
| Respondents/Cross-Appellants, | UNPUBLISHED OPINION |
| v. | |
| ERIC PEDERSEN, an individual, and EH PEDERSEN ENTERPRISES LLC, a Washington limited liability company, | |
| Appellants/Cross-Respondents, | |
| and | |
| CRAB FISHERIES LLC, a Washington limited liability company, CRAB QS INVESTMENTS LLC, a Washington limited liability company, and OCEAN GOLD FISHERIES LLC, a Washington limited liability company, | |
| Nominal Defendants. | |

DÍAZ, J. — After personal and business disagreements, Susan Hanson and other minority members (together, Hanson) of three crabbing companies sued their manager and principal majority interest-holder, Eric Pedersen. Hanson brought

numerous causes of action, asserting that Pedersen mismanaged the companies and engaged in self-dealing.  The case proceeded to a bench trial, in which Hanson won on some, but not all of their claims and, after which, the court reversed one of its findings against Pedersen on reconsideration.  The parties filed cross-appeals, neither of which merit relief by this court.  Thus, we affirm.

## I.    BACKGROUND

The plaintiffs below and respondents/cross-appellants on appeal are Susan Hanson and Barbara J. Cosgrove, as trustee for the trusts of Quinn Cosgrove and Megan Cosgrove (again, together, Hanson), and they are minority-members of three member-managed limited liability companies (LLCs) in the crabbing industry (collectively, the Crab Companies).  Two of the defendants and the sole appellants/cross-respondent are Eric Pedersen and EH Pedersen Enterprises.[1]  In addition to acting as the managing member and registered agent for the Crab Companies, Pedersen manages several other Washington crabbing entities that Hanson holds no interest in: Bering Star, LLC, Lady Helen, LLC, and GL Crab, LLC.

The Crab Companies were formed between 2003 and 2006, and they are titled Crab Fisheries, LLC (CF), Crab QS Investments, LLC (CQS), and Ocean Gold Fisheries, LLC (OGF).  Their operating agreements are substantively identical, and the general business purpose of each one is to acquire crab quota

---

[1] E.H. Pedersen Enterprises, LLC (EHPE) was another member of the Crab Companies through 2019 and, after Eric's father, Einer, died in 2016, Eric's mother, Emma Pedersen, was its sole member, thereby making Eric and Emma the majority interest-holders of the Crab Companies.

shares and lease individual fishing quotas for the harvest of various types of crab in the Bering Sea.[2]

Animosity between the parties arose with regard to another company called Vesteraalen, LLC, with which Hanson was employed and which Pedersen's father (Einer) once managed. Susan Hanson is Pedersen's paternal aunt. In 2016, interpersonal issues and disagreements led Hanson to vote to remove Einer as its manager and replace him with her son. They also voted to terminate Pedersen from Vesteraalen. These actions damaged the relationship between the parties, with Hanson on one side and Pedersen and his mother on the other. As of at least early 2017, Hanson and Cosgrove began to take actions to try to remove Pedersen as the Crab Companies' manager. The foregoing facts, drawn from the court's ultimate findings and as confirmed in the parties' briefing, are uncontested.

In May 2022, Hanson sued Pedersen and EHPE, making numerous allegations that he mismanaged the Crab Companies' funds. In October 2023, Hanson's first amended complaint asserted causes of action for inter alia breach of fiduciary duty, breach of contract, breach of the implied duties of good faith and fair dealing, and unjust enrichment. The case proceeded to a four-day bench trial

---

[2] In 2005, the crab fisheries in federal waters off of Alaska were privatized in a process called "rationalization," in which existing participants were issued quota shares allocating their allowable catch. Generally, under the system, the National Marine Fisheries Service issues individual fishing quotas based on the amount of quota shares the participants hold and these allow a certain poundage of crab to be harvested per species and area. Entities which acquired shares prior to "rationalization" received quota units at an initial issuance rate, while other entities are required to meet other federally regulated criteria in order to acquire, transfer, or lease crab quota. The first crab company (CF) was created before "rationalization," so it is an initial issue recipient, but the other two Crab Companies (CQS and OCF) are not.

in January 2024.

In February 2024, the court issued findings of fact and conclusions of law. On various specific claims and transactions, it found Pedersen had violated his fiduciary duties and awarded Hanson damages, prejudgment interest, and attorney's fees and costs, but it also denied Hanson's desired recovery on others. Pedersen moved for reconsideration on multiple findings and the court ultimately granted his request in part. In April 2024, the court entered judgment for Hanson consistent with its findings and conclusions, as amended by its order on reconsideration, and Pedersen timely appealed. Hanson timely cross-appealed the following month.

## II.    ANALYSIS

A.    Pedersen's Assignments of Error on Appeal

1. Whether Pedersen Paid Off a $180,000 Loan to Lady Hanson

Among its findings, the trial court concluded that Pedersen was liable for a $180,000 loan which Crab Fisheries made in June 2016 to his separate company, Lady Helen, because it found there was no discernable evidence that it was ever repaid. Pedersen claims this finding is unsupported. We disagree.

We review a trial court's decision following a bench trial by asking whether substantial evidence supports the court's findings and whether its findings support its conclusions of law. Casterline v. Roberts, 168 Wn. App. 376, 381, 284 P.3d 743 (2012). Substantial evidence is a quantity of evidence sufficient to persuade a rational, fair-minded person that a finding is true. Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006). As long as substantial

evidence supports a finding, it does not matter that other evidence may contradict it. Schatz v. Dep't of Soc. & Health Servs., 178 Wn. App. 16, 25, 314 P.3d 406 (2013). That is because in deciding whether bench trial findings are supported by substantial evidence, we defer to the trial court's determinations of the weight and credibility of the evidence. In re Estate of Barnes, 185 Wn.2d 1, 9, 367 P.3d 580 (2016). We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

In its written findings of fact, the court found that the loan was not repaid because (a) Pedersen's trial testimony was not credible and (b) the evidence supporting Pedersen's explanation of repayment was confusing and uncorroborated.

As to the first reason, the court emphasized that Pedersen had initially denied having any memory of this loan during his deposition, before he later explained its repayment at trial. It concluded that Pedersen had not been truthful and had attempted to hide this loan from Hanson, generally and at his deposition, damaging his credibility before the court on this issue and rendering his explanation at trial as to the loan's repayment not believable.

Pedersen's argument fails because we will not disturb the court's credibility findings, and Pedersen's argument would require this court to weigh the testimony and the numerous accounting entries differently than the trial court did. See Greene, 97 Wn. App. at 714.

Specifically, and as to the second reason for the court's holding, Pedersen's explanation was that there was evidence in the record that CF was paid back because the company accounts showed that Lady Helen paid *CQS* $180,000 in late 2016. He claimed this payment to CQS served to repay CF for its loan to Lady Helen because CF owed CQS that exact sum of money at that time. He averred that CF had been obligated to pay CQS the $180,000 because Vesteraalen had inadvertently switched the amounts of money it sent those two companies when it had repaid other outstanding loans.

The court found that Pedersen's explanation of repayment relied on a "non-decipherable series of transactions for which there is little more than accounting entries and Mr. Pedersen's own say-so." In other words, the court found that it could not credit the evidence he presented at trial "unless [it] accept[ed] Mr. Pedersen's testimony about what all these things represent."

We hold there is substantial evidence to support the court's findings and ultimately its conclusion that Pedersen was liable to Hanson to repay the loan. Apart from one or two checks and a few bank records, the evidence Pedersen offered for his explanation of repayment were line items in internal ledgers that he himself had created.[3] Although other evidence may contradict the court's findings, we defer to the trial court's decision not to credit Pedersen's contention the loan

_____

[3] What is more, of the six exhibits Pedersen relies on to support this argument, only one is a third-party document. The other documents are, again, general ledgers which he created, an email which he wrote, and a copy of a check from a company which he controlled. We note also that the second of two checks he cites to was only marked for identification at trial, but not admitted, and not provided to this court for its review.

was paid back in a series of transactions, which even his briefing concedes "may be a bit convoluted." Schatz, 178 Wn. App. at 25.

Moreover, Pedersen's argument assumes that the $180,000 payment Lady Helen made to CQS ultimately made CF whole, i.e., resolved any accounting discrepancy between CF and CQS. But such reconciliation would only be so if we assumed the evidence establishes all funds moved between CQS and CF were otherwise balanced. We may not so assume. Rather, we conclude that there was substantial evidence to support the court's finding to the contrary: that the Crab Companies' financial records were generally "in *disarray*" due to Pederson's "failure to keep adequate and appropriate records." (Emphasis added.) Pedersen does not directly challenge this finding on appeal. As a result, the court ultimately concluded the state of the Crab Companies' financial records raised "red flags," which, "when coupled with Mr. Pedersen's attempts during this litigation to keep the $180,000 loan a secret, le[d it] to the conclusion" that it was "not believable" the loan was repaid. Again, we defer to this determination that the trial court made as to the weight and credibility of the evidence. See Barnes, 185 Wn.2d at 9.

Finally, we reject Pedersen's contention, in his reply brief, that his "credibility as to his [deposition] testimony that he did not recall the loan" is "immaterial." As our Supreme Court has held, "[i]ssues affecting credibility *can* be material matters, if the witness [whose credibility is at issue] testifies regarding material issues in a case." In re Recall of Pearsall-Stipek, 141 Wn.2d 756, 772, 10 P.3d 1034 (2000) (emphasis added). That is precisely what occurred here.

Therefore, we hold that there is sufficient evidence to persuade a rational,

fair-minded person that Pedersen's explanation of repayment hinged upon unreliably documented transactions and dubious testimony, as the court found. Hegwine, 132 Wn. App. at 555-56. We need not reach any further arguments.

2. Rent Payments

Between 2017 and 2022, the Crab Companies paid Bering Star and Lady Helen a total of over $76,000 in rent. Under the Crab Companies' operating agreements, Pedersen was liable for acts or omissions constituting "fraud, misconduct, bad faith or gross negligence[,]" as the managing member of each LLC. Pedersen argues the court erred in finding he acted in bad faith by making these rent payments from the Crab Companies. We disagree.

The court's written findings set out the evidence it relied on. Specifically, before 2016, the Crab Companies did not pay rent, but after Pedersen was terminated from Vesteraalen, he began using the Crab Companies' funds to pay rent for space which was occupied and used by two of the other companies he controlled, Bering Star and Lady Helen. He also testified the Crab Companies' records are primarily maintained electronically.

The court concluded that this evidence "undercu[t]" Pedersen's claim of a good-faith need for office space. It also noted that there was no explanation for why the amounts of rent paid by each entity materially varied between 2017 and 2022. The court held that the rent payments did not serve any legitimate purpose and that Pedersen had violated his duties and acted in bad faith by transferring rent funds to companies that he owned through undocumented lease agreements. The record also reflects that, as Pedersen testified at his deposition, he regularly

8

leaves Washington while his fishing vessel for Bering Star is at sea and that, when it is docked, he works on it for 60-70 hours per week.

We hold that the entirety of this evidence is sufficient to persuade a rational, fair-minded person there was no business need to make the payments, as Pedersen claimed, and to support the court's conclusion Pedersen paid this rent in violation of his duties to the Crab Companies. Hegwine, 132 Wn. App. at 555-56.

In response, Pedersen claims the court's finding improperly substituted its own business judgment for Pedersen's. We disagree, and note the court specifically clarified it did not do so:

> The Court is not finding, as Plaintiffs have requested, that the Crab Companies do not need office space, *that is a decision to be made within the discretion of the manager.* The Court is saying, however, the [sic] Mr. Pedersen's decision to rent space without any documentation from companies he has a financial interest in *strikes the Court as self-dealing.* Had Mr. Pedersen went out and sought to rent space on the open market, the issues before the Court would be much different then [sic] how they have been presented by the parties.

(Emphasis added.) Moreover, Pedersen acknowledges "there may be a legitimate discussion over the necessity of office space for the Crab Companies." This statement nearly concedes that the court had some evidence supporting its decision, even if there may be evidence to the contrary. Schatz, 178 Wn. App. at 25. We will not reweigh whether a business need is legitimate, and we will not disturb the court's credibility determination as to Pedersen's claimed need for office

9

space. <u>Barnes</u>, 185 Wn.2d at 9.[4]

B.    <u>Hanson's Assignments of Error on Cross-Appeal</u>[5]

   1. <u>Quota Share Transactions with Lady Helen</u>

In 2019, two companies Pedersen managed, CF and CQS, purchased additional crab quota shares ("QS") from Lady Helen without consulting Hanson. Specifically, the evidence showed that CF paid Lady Helen $100,000 and CQS paid Lady Helen $250,000 for the QS. Pedersen subsequently sold these shares from both companies to Bering Star at the same price they were purchased for. Hanson claims the court erred in finding these transactions did not violate Pedersen's fiduciary duties or cause them injury. We disagree.

To prevail on their claim, Hanson had to prove (1) a fiduciary duty existed, (2) Pedersen breached that duty, (3) they experienced injury, and (4) the claimed breach proximately caused that injury. <u>Miller v. U.S. Bank of Wash.</u>, 72 Wn. App. 416, 426, 865 P.2d 536 (1994). As to the third element, in a case concerning breach of fiduciary duty, this court held plaintiffs can only recover for claimed losses where they show damages with reasonably certainty. <u>Gillespie v. Seattle-First Nat'l Bank</u>, 70 Wn. App. 150, 176, 855 P.2d 680 (1993).

_____

[4] Because we hold none of Pedersen's claims on appeal are availing, we decline his requests as to fees.

[5] Hanson notes that Pedersen's reply brief does not respond to several of their assignments of error and thus, they argue, we should not "take up a position on Pedersen's behalf." Herein, we simply consider the merits of their arguments and "make our decision based on the argument and record before us." <u>Hanson v. Estell</u>, 100 Wn. App. 281, 286, 997 P.2d 426 (2000).

Here, the court concluded Hanson's claim failed because they had not met their burden to establish specific damages arising from the purchases and sales of the QS at issue. It explained:

> Plaintiffs have not pointed this Court to any specific damages related to these transactions and while they speculate that the Crab Companies books are so unreliable that it must mean that such funds were never paid back to the Crab Companies, such speculation does not substitute for proof where, as here, it is Plaintiffs' burden to demonstrate damages. The Court will not order Mr. Pedersen to pay back $350,000 to the Crab Companies based on Plaintiffs' speculation.

The court added that, "[u]nlike the other transactions discussed above, there was an adequate financial [record] that the Court could easily follow as to how Bering Star paid for the crab QS."

We hold that there is substantial evidence to support these findings. Hanson relies on their expert's trial testimony, which stated that he "could not confirm that the Crab Companies had received the funds to which they were entitled from the sale" of the quota. But his testimony did not actually establish, let alone even contend, that Hanson had *not* received the funds they were owed. When directly asked to identify Hanson's damages, he replied, "if I put myself in the place of the plaintiffs, I would be–I would be very concerned," and he also stated, "I just didn't have confidence. I did not have confidence in the – in the accounting that was done[.]" This assertion merely expressed the expert's lack of confidence and concern about the company accounts and does not establish the funds had not been received. Hanson otherwise does not challenge the "adequate

financial records" the court relies on—and which appear in the record[6]—to conclude the payments were made, other than castigating the court for inconsistent credibility determinations. We do not reweigh credibility determinations. Greene, 97 Wn. App. at 714.

Substantial evidence supports the court's findings that it would be speculative to conclude Hanson suffered economic harm, that Hanson did not prove injury, and that they may not recoup damages. Gillespie, 70 Wn. App. at 176; see also In re Marriage of Burrill, 113 Wn. App. 863, 870, 56 P.3d 993 (2002) ("We will uphold a conclusion of law if the trial court's findings of fact supports it."). We need not reach any other argument on this issue raised by Hanson.

2. Hanson's Other Requested Remedies

Hanson next argues that the court erred by denying two additional alternative remedies that it sought: either partition, based on a requested finding that the Crab Companies constituted a legal partnership, or dissolution. We address each in turn.

As to the request for partition, determining whether a partnership has been created involves a question of fact. Curley Elec., Inc. v. Bills, 130 Wn. App. 114, 116, 121 P.3d 106 (2005). The party alleging a partnership has the burden to

---

[6] Specifically, as to the $100,000 CF paid Lady Helen, Pedersen testified that a $100,000 transaction in a general ledger for CF and an entry in its bank statements showed $100,000 was contributed from his equity as payment to CF for the sale of the Lady Helen shares. And as to the $250,000 that CQS paid, Pedersen testified to four payments totaling $94,000 in a bank statement for CQS plus a $156,000 transaction in its general ledger and a related payment in its bank statements represented the payment CQS received for the Lady Helen quota shares. $94,000 plus $156,000 equals $250,000.

prove it, id. at 120-21, and a partnership requires the existence of a relationship formed for the purpose of joint profits. Id. at 118.

The court found there was no partnership between the Crab Companies and noted the evidence did not show they demonstrated a joint purpose to share in profits. Rather, the court explained, the evidence indicated that the Crab Companies did not combine their quota shares, and they each held separate units of shares, independently derived income from those shares, and compensated their members separately.

There was substantial evidence to support the trial court's finding the LLCs did not share profits and thus, they had not formed a partnership. And because there was evidence to support the finding no partnership was formed, the court did not err in rejecting Hanson's partition request. Burrill, 113 Wn. App. at 870.[7]

In response, Hanson emphasizes LLCs are included among the legal "persons" who may constitute a partnership. However, all of the evidence Hanson points to in alleging the formation of a partnership centers on Pedersen's behavior as an *individual*—not on the actions or structure of the LLCs as entities. And, as the court noted, Hanson has not provided any authority for the proposition that LLCs "morph into a single partnership when a common manager member mismanages the respective LLCs affairs." As a result, we assume one does not exist. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193

---

[7] The remedy of partition presumes the existence of a partnership to begin with. See RCW 25.05.300(5)(a)-(c) (providing a remedy, upon "application *by a partner*," where, for example, there is a judicial determination that "[t]he economic purpose of *the partnership* is likely to be unreasonably frustrated[.]") (emphasis added).

(1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Thus, this argument fails.

As to Hanson's request for dissolution, RCW 25.15.274 provides that "superior courts may order dissolution of a limited liability company whenever: (1) It is not reasonably practicable to carry on the limited liability company's activities in conformity with the certificate of formation and the limited liability company agreement; or (2) other circumstances render dissolution equitable."[8] The fashioning of equitable relief, such as dissolution, is reviewed for abuse of discretion, and trial courts have broad discretion with regard to such remedies. Borton & Sons, Inc. v. Burbank Properties, LLC, 196 Wn.2d 199, 205-07, 471 P.3d 871 (2020). A court's decision is an abuse of discretion if it is manifestly unreasonable, meaning that it is outside the range of acceptable choices given the facts and applicable legal standard. Graser v. Olsen, 28 Wn. App. 2d 933, 940, 542 P.3d 1013 (2023).

In denying the request, the court held that Hanson could seek other recourse to stop working with Pedersen under the Crab Companies' operating agreements, apart from seeking dissolution of the LLCs. Hanson offers no authority to support the proposition that it was not "reasonably practicable" to carry

---

[8] RCW 25.15.274 does not define "reasonably practicable," and, as we noted recently, there are no published Washington cases defining its meaning, and principles of equity should guide our analysis. Buich v. Tadich Grill Dev. Co., LLC, No. 78931-7-I, slip op. at 15 n.1 (Wash. Ct. App. Jan. 6, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/789317.pdf. We cite to this matter pursuant to GR 14.1 as necessary for a reasoned decision.

on the Companies' activities in this way. RCW 25.15.274. Thus, the court's rejection of Hanson's dissolution request was not manifestly unreasonable, and its decision not to dissolve the Crab Companies was within its range of acceptable choices. Olsen, 28 Wn. App. 2d at 940. As a result, this argument also fails, and we need not reach any other argument.

3. Reversed Finding on Reconsideration

After trial, the court initially found Pedersen had breached his fiduciary duties with regard to an alleged $39,582.79 shortfall in CF's distributions, and it ordered he repay that sum. But it reversed that finding on reconsideration, and Hanson claims it erred by doing so.

We review a court's decision to grant or deny a motion for reconsideration for abuse of discretion. Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 88, 60 P.3d 1245 (2003). We will only reverse a trial court decision under this standard if the court's decision applies the wrong legal rule, relies on unsupported facts, or adopts a view no reasonable person would take. See Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

The court provided its reasoning for reversing its prior finding in its oral ruling. It explained Hanson bore the burden to demonstrate injury based on the alleged breach concerning the shortfall, yet they did not actually assert they had received inadequate distribution amounts. It commented that, unlike other claims based on identifiable facts in the record, Hanson had pointed to no evidence actually tracking the sum of the shortfall they alleged. As a result, although it acknowledged Pedersen's poor accounting was at least in part responsible for the

15

uncertainty, it concluded Hanson had not shown Pedersen had illegally received or retained the sum of money in question rather than disburse it.

We hold this ruling was not an abuse of discretion. Rather, it was a reasonable interpretation of the lack of evidence as to injury, an element Hanson bore the burden to prove, Miller, 72 Wn. App. at 426, and had to show with reasonable certainty, Gillespie, 70 Wn. App. at 176. The lack of evidence is apparent from the way Hanson's counsel described their expert's trial testimony, during the hearing on reconsideration. Counsel explained that Hanson's expert had testified that the claimed sum of money appeared to be missing from CF's distributions because he could not trace it in the available bank statements. Tellingly, counsel continued to summarize by stating, "at some point, there became – as $39,000 that *went somewhere*, *but it wasn't attributable to an individual member receiving it*." (Emphasis added.) This statement was an implicit concession that Hanson did not adduce evidence to establish that Pedersen improperly transferred or retained that sum. We hold it was not an abuse of discretion for the court to conclude they did not prove breach or injury on this claim and thus, to reverse its earlier finding on reconsideration.[9]

---

[9] Hanson also seeks fees for any cross-appeal claims that succeed, both for litigation expenses on appeal and related to the trial. We do not award such fees, as we conclude they did not succeed on any claim. In addition, although Pedersen's appeal is also unavailing, we decline to award Hanson any additional fees on appeal. Ultimately, both parties have cross-appealed unsuccessfully, and Hanson was already awarded fees at trial. See Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007) (holding, "[b]ecause neither party totally prevailed on appeal, we decline to award attorney fees under RAP 18.1"). Likewise, since their affirmative claims fail, Hanson has not "substantially prevail[ed]" on appeal to merit costs under RAP 14.2.

### III.    CONCLUSION

We affirm and award neither party fees on appeal.

_Díaz, J._

WE CONCUR:

_Feldman, J._                    _Chung, J._