[No. 9944. Department Two. June 20, 1912.]

ORIENTAL REALTY COMPANY, *Respondent*, v. H. C. TAYLOR
et al., *Appellants*.[1]

PARTNERSHIP—CONTRACT—CONSTRUCTION—JOINT ADVENTURES. A partnership is created by an agreement between two persons to enter into the business of dealing in tax titles, whereby one was to conduct the business and the other was to furnish what money he deemed advisable, to hold the title, and to receive back his advances and interest, before even division of the balance as profits; especially where the parties in a subsequent written agreement refer to the relation as a copartnership.

[1]Reported in 124 Pac. 489.

TRUSTS—PRINCIPAL AND AGENT—AGENCY WITH INTEREST.  There
is an agency with an interest, where a principal takes tax titles,
obtained by his agent, under an agreement to divide the profits
equally, after return of the money advanced with interest; and the
principal holds the title in trust and is liable to an accounting.

ASSIGNMENTS—PROPERTY ASSIGNABLE—AGENCY WITH INTEREST.
Where property is held in trust for an agent, and subject to an
accounting for profits, the agent's interest is assignable.

Appeal from a judgment of the superior court for King
county, Main, J., entered April 29, 1911, upon findings in
favor of the plaintiff, in an action for an accounting, after
a trial to the court. Affirmed.

*Ira Bronson*, for appellants.

*Kerr & McCord*, for respondent.

MOUNT, J.—This action was brought by the plaintiff to
secure an accounting and a division of real estate held in
the name of the defendants Taylor and wife.  On a trial of
the case, the court granted the relief prayed for.  The de-
fendants Taylor and wife have appealed.

It appears that, in December, 1894, the defendants H. C.
Taylor and D. F. McConnaughey entered into a written
agreement, as follows:

"Whereas, H. C. Taylor and D. F. McConnaughey are
about to enter into the business of buying at tax sales and
dealing in tax titles;

"It is therefore mutually agreed between said parties that
the said H. C. Taylor shall furnish the said D. F. McCon-
naughey with whatever money he shall deem advisable to
invest in such ventures.  That the said D. F. McConnaughey
shall attend to all of the details and perform all of the work
necessary to properly conducting and managing said busi-
ness, including attendance at tax sales, taking proper cer-
tificates and deeds, giving proper notice to owners, and all
other matters necessary to properly conducting said busi-
ness.  That the title to all property purchased at any such
sale and all certificates of purchase shall be taken in the name
of H. C. Taylor.  That said H. C. Taylor shall be paid out
of the profits of said business an amount equal to ten per

cent interest per annum on the money invested. That whatever profits shall remain after paying the ten per cent aforesaid shall be equally divided between said H. C. Taylor and said McConnaughey and said McConnaughey shall receive no other pay for his services."

In pursuance of this agreement, Taylor advanced certain sums of money, which were invested from time to time in delinquent tax certificates. The certificates were taken in the name of H. C. Taylor, and the property in controversy in this action was acquired by foreclosure of such certificates, except one piece, known as the St. Charles Hotel property, which was acquired by defendants under an agreement as follows:

"This agreement made this 10th day of September, A. D. 1898, between H. C. Taylor and L. R. Taylor, his wife, of Seattle, King county, Washington, parties of the first part, and D. F. McConnaughey, party of the second part, Witnesseth,

"That, whereas, the parties hereto are about to purchase the east 70 feet of lot 1 in block 2, D. S. Maynard's plat of the town (now city) of Seattle, known as the St. Charles Hotel property, for the stipulated price of $26,500, subject to a mortgage thereon now outstanding, amounting to $15,000 of principal and bearing interest at the rate of 6½% per annum; and whereas the title to said property is to be taken in the name of H. C. Taylor and the said H. C. Taylor has advanced for the purchase of said property certain moneys and securities of the agreed amount and value of $10,194;

"Now, therefore, it is hereby agreed by the parties of the first part that the said H. C. Taylor holds said property in trust for the copartnership consisting of himself and the party of the second part upon the understanding and agreement that out of the income or out of any moneys arising from the sale of said property, after paying all necessary expenses, taxes, insurance, assessments, repairs or other expenditures for the benefit of said property, the said H. C. Taylor is to be paid the said sum of $10,194 with interest thereon at 8% per annum from the date of purchase of said property until the same shall be fully paid, said sum of

$10,194 not to become due and payable until the same shall be payable out of the moneys arising from the said property; but it is understood that if the same can be paid by a loan upon said property or other properties of the said copartnership at a lower rate of interest or can be paid out of other moneys to the said copartnership in any wise belonging, then the said party of the second part shall have the right to pay such sum from such moneys. It is further agreed that, when said sum of $10,194 and the interest thereon herein provided for have been fully paid, then the said party of the first part shall and will make, execute and deliver a deed to an undivided one-half interest in and to the said property to the party of the second part on his demand. It being expressly understood that the said property is bought for the said copartnership, and that all profits arising from the purchase of such property and the sale thereof, and the lease thereof, or in any other wise arising, are to be equally divided between the said parties of the first part and the party of the second part, subject, however, to the payment to the parties of the first part of said sum of $10,194 and the interest thereon as herein provided."

This agreement was signed by Taylor and his wife, and was duly acknowledged. The actual business of buying certificates and of handling the property acquired as above stated, and collecting the rents and paying taxes, was conducted for several years principally by J. W. McConnaughey, a brother of D. F. McConnaughey, J. W. McConnaughey having by mutual consent some interest in the business, which interest did not affect the interest of Taylor. About November 1, 1904, when Mr. Taylor had a large sum of money invested in the property, he became dissatisfied with the management thereof by Mr. McConnaughey and took the management thereof to himself, and afterwards collected the rents and revenues from the business. During that same month, the McConnaugheys assigned and transferred all their interest in the property and business to M. F. Backus; and in January, 1905, Mr. Backus and wife sold and transferred all their interest to the plaintiff in this case, the Oriental Realty Company. In 1909 the Oriental Realty

Company brought this action for an accounting and a division of the property. Upon the trial the court concluded:

"That, under and by virtue of the contract of December 27th, 1894, a joint adventure or business arrangement, embracing many of the elements of a copartnership, was formed between H. C. Taylor and D. F. McConnaughey, and that the contract of September 10, 1898, was a continuation of said relationship, and that all of the property described in the complaint and hereinbefore described was acquired under and by virtue of such relationship, and that the title to said property rests in H. C. Taylor, and that he holds the same in trust for himself and for the plaintiff Oriental Realty Company as the successor in interest of said D. F. McConnaughey. . . . That upon the payment of said sum of $22,385.83 to the said H. C. Taylor, or to his attorney, or upon the payment of the same into the registry of this court, the plaintiff is entitled to a conveyance from the said H. C. Taylor and L. R. Taylor, his wife, of an undivided one-half interest in all of the real estate above described, free and clear of encumbrances except the mortgage of $15,000 above mentioned."

The appellants assign that the court erred in holding that the agreement between Taylor and McConnaughey created a joint adventure, that the present relation between the Oriental Realty Company and Taylor and wife is that of joint adventurers, and that the rights of said parties are the same as though such relationship composed a partnership; and also that the Oriental Realty Company is the owner of an undivided half interest in the property in controversy. The main contentions on the part of the appellants are that no partnership relation existed between Mr. Taylor and Mr. McConnaughey, and that the court could not properly decree a half interest in the property to plaintiff. No question is made upon the accounting which the court took. We shall, therefore, assume that the accounting, if proper to be made, is correct, and shall notice the contentions as stated above.

The relations of the defendant H. C. Taylor and D. F. McConnaughey were defined by the written contract first

above quoted. It is plain therefrom that Mr. Taylor and Mr. McConnaughey agreed to enter into the business of buying property at tax sales, and dealing in tax titles. Taylor was to furnish the money and McConnaughey was to perform all of the work in conducting the business. Title to the property acquired was to be taken in the name of Taylor. Taylor was to receive an amount equal to ten per cent on the money invested. Whatever profits remained after paying the ten per cent were to be divided equally. McConnaughey was to receive no other pay for his services. In short, Taylor was to furnish the money, McConnaughey was to furnish his time and skill and manage the business, and after deducting the cost, plus ten per cent per annum on the money invested, the balance or profits were to be divided equally. No limit of time was fixed. It would seem, upon the plainest principles of law, that this writing shows a partnership to be conducted under the name of H. C. Taylor by Mr. McConnaughey. *Causten v. Barnette*, 49 Wash. 659, 96 Pac. 225. See, also, note to *Miller v. Simpson*, 107 Va. 476, 59 S. E. 378, 18 L. R. A. (N. S.) 962.

It is true, no mention is made of the losses; but losses, if any, must first be deducted before there could be profits, and necessarily must be borne equally. The contract, executed in September, 1898, when the St. Charles Hotel property was purchased, refers to the relation between Taylor and McConnaughey as a copartnership. This agreement is signed by the appellants, and tends to show how the parties at that time construed their relations in regard to the business.

But we deem the exact legal status of these parties at that time as of no special importance; because, if McConnaughey at that time was a mere agent authorized to purchase these certificates and acquire lands to be held in the name of Taylor, he was an agent with an interest in the property purchased. When the property was purchased in the name of Taylor, the latter took it in trust to be held for himself and Mr. McConnaughey. There was no limit to the time he

should hold it. When the property was sold, the purchase price, with ten per cent per annum, was to be deducted, and the balance or profits were to be divided equally between them. In the item of the hotel property, which was a special purchase, the interest was only eight per cent per annum.

In the case of *Seymour v. Freer*, 75 U. S. 202, which was a case involving a contract somewhat similar to the one now under consideration, but which was not so clear in fixing a partnership relation between the parties, and which fixed a limit of time when the property should be sold, the court held that the relation between the parties was one of agency, and said, at page 213:

"We think Seymour took the legal title in trust for the purposes specified. A trust is where there are rights, titles, and interests in the property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carries with it, to the holder, absolute dominion, but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. Interests in real estate, purely contingent, may be made the subject of contract and equitable cognizance, as between the proper parties. The object of the trust here was to sell the property within the time limited, and, after deducting from the proceeds the outlay, with interest and taxes, to pay over to Price one-half of the residue. To this extent, Seymour was a trustee, and Price the *cestui que trust*. They had a joint interest in the property. Seymour held the legal title, but the rights of Price were as valid in equity as those of Seymour were at law."

And, again, the same opinion recites:

"There is another view of the subject, which we think may properly be taken. The agreement, that the property should be sold, and half of the profits paid to Price, was a charge upon the property, and gave him a lien to the extent of the amount to which he should be found entitled upon the execution of the agreement, according to its terms. The prin-

ciple involved in this proposition is a familiar one in equity, and constantly applied in the administration of its jurisprudence. It is insisted by the appellees that the contract made the parties copartners in respect to the lands to be bought. We cannot adopt that view of the subject. . . . But the result is the same as if we held that the parties were copartners. In that event, Seymour would still have held the property as trustee for the firm, according to the rights of the respective members."

So it was in this case. If there was no partnership, the property was acquired and taken in the name of Taylor, not for himself alone, but in trust for the benefit of himself and McConnaughey. When the business produced sufficient funds to pay the original amount invested, with a specified interest, the balance or profits belonged equally to Taylor and McConnaughey. It made no difference therefore which held the legal title. The result would be the same whether they were originally copartners or sustained some other legal relation. At the time Taylor took the sole management of this property in 1904, some ten years after the first contract was entered into, the relation of the parties ceased, but Taylor held the property subject to his claim for the money advanced, with interest. He was, of course, bound to account for the rents and profits of the property to McConnaughey, who was to share equally with him in whatever was left. McConnaughey's interest in the property was clearly an assignable interest. When he sold and transferred it to the plaintiff in this case, the plaintiff acquired whatever interest he had. We are satisfied, therefore, that the trial court properly concluded that appellant held the property in trust for himself and the plaintiff, and that the final decree was right. It is therefore affirmed.

ELLIS, MORRIS, and FULLERTON, JJ., concur.