[No. 27381.   Department Two.   May 16, 1939.]

PETER CONSTANTI *et al., Appellants,* v. MICHAEL BAROVIC *et al., Respondents.*[1]

*A. O. Burmeister, Edson M. Case,* and *John D. Cochran,* for appellants.

*Bogle, Bogle & Gates* and *Ray Dumett,* for respondents.

SIMPSON, J.—This is a suit in equity, in which the plaintiffs allege a partnership with the defendants, and pray for an accounting of the business and division of the partnership property.

In their amended complaint, plaintiffs allege that, September 29, 1936, in pursuance of a previous oral agreement, they entered into a written copartnership contract to purchase and operate the Riviera theater in Tacoma, the Liberty and Roxy theaters in Puyallup,

[1]Reported in 90 P. (2d) 724.

and the Riviera theater in Sumner; that, immediately after the execution of the articles of the copartnership, the defendant Michael Barovic begun a studied course of domination against plaintiffs for the sole purpose of forcing plaintiffs to surrender their partnership interest to defendants without the payment of any sums of money whatsoever. It further alleged that defendant Michael Barovic seldom, if ever, consulted plaintiffs upon any partnership matter; that he refused to account or report to plaintiffs as to his manner and method of doing business, and refused to make a statement concerning the financial affairs or conditions of the various partnership operations; that he refused to make advances to plaintiffs in the sum of one hundred dollars per month, as provided in the copartnership agreement; that he notified plaintiffs that the partnership was at an end and these plaintiffs had no interest whatsoever therein; and refused to make an accounting to plaintiffs.

Defendants answered, admitting that they entered into the written agreement mentioned in the amended complaint, admitted the service upon plaintiffs of written notices dissolving the relationship made in the agreement, and, with minor reservations, denied the balance of the complaint.

For an affirmative defense and as a cross-complaint, the defendants allege that, at the time the property in question was purchased, defendant Michael Barovic was required to and did contribute the initial capital necessary to purchase the property in the total sum of twenty-five thousand dollars, and that no cash or capital whatsoever was contributed by the plaintiffs. It was further alleged that, May 1, 1936, defendant Michael Barovic, at the request of Peter Constanti, entered into an oral agreement with plaintiffs with respect to the operation of the theatrical properties, by

the terms of which agreement it was provided that each of the parties should give all reasonably necessary time and attention to the theatre business for the joint interests, profits, and advantages of the business; that the agreement further provided that the contribution of twenty-five thousand dollars, advanced by Michael Barovic, including interest, and other necessary charges, should be the first and paramount charge against the profits of the partnership; and that, as a further essential term of the agreement, it was agreed that plaintiff Constanti would have a full interest as partner in the business and property after the twenty-five thousand dollars had been returned to defendant Barovic.

It was further alleged that plaintiff Peter Constanti had not complied with the terms and conditions of the copartnership contract, and had failed to give any time, attention, or attendance whatever to the business; that he received money belonging to the business and had failed to deposit the moneys in the firm's bank account; that secretly he had made an arrangement for advertising signs to be shown in the theater in order to pay the plaintiffs' personal bills; that he had taken cash from the box offices of the theaters at Sumner and Puyallup and had, without justification, abused, interfered with, and undermined the morale and efficiency of the employees in the above-mentioned theaters.

Then followed allegations to the effect that defendant had by letter terminated whatever partnership or joint enterprise that had existed between the plaintiffs and defendants.

The reply put in issue the allegations of the answer.

At the conclusion of the trial, the court entered judgment to the effect that plaintiffs were not partners and had no interest in the theater or in the theatrical business. Plaintiffs have appealed, and contend that

the trial court erred (a) in finding that there was no partnership between plaintiffs and defendants; (b) in dismissing the appellants' amended complaint and in entering judgment for the respondents; and (c) in refusing to grant a new trial.

For convenience, we will refer to Peter Constanti and Michael Barovic as though they were the only parties to this action.

Realizing that the trial court decided the controverted facts in favor of the respondents, we summarize the undisputed facts and those favorable to respondents as follows: Several years before the beginning of the present controversy, Dominic Constanti was engaged in, and made a notable success of, the motion picture business. At the time of his death, he owned the Riviera theater in Tacoma, the Liberty and Roxy theaters in Puyallup, the Harbor theater in Aberdeen, and the Riviera theater in Sumner, Washington. His heirs were his wife, Mary Constanti, a daughter, Andrea Barovic, wife of defendant Michael Barovic, a son, Peter Constanti, the plaintiff in this action, and three other children. Due to litigation between respondents and Mary Constanti, a hostile feeling was ever present between respondents and the widow and the other children of Dominic Constanti.

The widow and her children operated the theaters for some time after the death of Dominic Constanti, but did not continue to enjoy the success of the original owner. During the early part of the year 1936, respondent Michael Barovic was contacted by Peter Constanti with the suggestion that he purchase the theaters from the estate. In April, 1936, a conference between respondents and Mary Constanti and her children was arranged by the attorney representing the estate. During the conference, a suggestion was made concerning respondent Peter Constanti's be-

coming a partner with respondent in the theatrical business. Appellant contends that respondent agreed to take appellant into the business as a partner, but respondent testified that he did not make any agreement to that effect, but said:

"Listen, Pete, if you promise me to do things, and one thing is, I want this as a promise, I want you to be sincere if we go in together, to work with me side by side, you can come in with me, and after the debts are paid and the contribution I am putting in, we can become fifty-fifty partners."

As a result of the conference, respondent and Mrs. Mary Constanti entered into a contract, by the terms of which respondent secured the interest of the estate and that of Mrs. Constanti in the theaters for the sum of twenty-five thousand dollars. In order to secure funds for the purchase price, May 1, 1936, respondent borrowed fifteen thousand dollars from J. C. Murphy, payable five thousand dollars May 1, 1937, five thousand dollars May 1, 1938, and the balance May 1, 1939, with interest at seven per cent per annum. A chattel mortgage to secure the payment of the loan was given by respondent on the furnishings and equipment in respondent's Beverly theater in Tacoma. May 12, 1936, respondent borrowed two thousand dollars from the State Bank of Puyallup. These sums, together with $8,405, were used to pay for the theaters and provide a working capital. Appellant signed the notes given to Murphy and the bank.

May 1, 1936, respondent took over the operation of the theaters with the exception of the one at Aberdeen, which is not concerned in this litigation. September 29, 1936, appellant and respondent entered into a written contract consisting of six pages, the pertinent portions of which are as follows:

"The parties above named have agreed, and do hereby agree, to become copartners in the business

of owning and/or operating motion picture theaters in Pierce county and elsewhere in the state of Washington, which copartnership actually commenced on or about May 1, 1936, by oral agreement of said parties containing each and all of the covenants, conditions and understanding which are herein set forth, and no others, this writing being identical with said orgal agreement. Prior to the date of this instrument the said parties, pursuant to said partnership agreement and as a part of said partnership agreement and as a part of said partnership enterprise, commenced the operation of, and have ever since continued the operation of, the following motion picture theaters, and no other, to-wit:

"(1)  The 'Riviera Theater' in Sumner, Washington;

"(2)  The 'Liberty Theater' and 'Roxy Theater,' in Puyallup, Washington; and

"(3)  The 'Riviera Theater' in Tacoma, Washington.

"The said Mike Barovic at the time of the commencement of said partnership owned and operated, and ever since has owned and operated a motion picture theater in Tacoma, Washington known as the 'Beverly Theater'. It has at all times been expressly understood and agreed, and is now expressly understood and agreed by the parties that said 'Beverly Theater' is the sole and exclusive property and business of said Mike Barovic and is not, and never has been, a part of, or in any way involved in or affected by this partnership.

"Each of the parties shall during the continuance of this partnership, give all reasonably necessary time, attention and attendance to, and use his best endeavors in, the business of the partnership, and shall, with reasonable skill and diligence, faithfully exert himself for the joint interests, profits and advantage of said partnership."

Then followed a statement relative to the keeping of the bank accounts. The contract stated further:

"It is expressly understood and agreed that said Mike Barovic shall have the sole and exclusive management of the business and affairs of the partnership, consulting with the said Pete Constanti, regarding all matters of major policy; and the said Mike Barovic shall have

sole and exclusive authority to make all purchases and bookings of pictures, provided, however, that the said Pete Constanti, when requested by Mike Barovic, shall assist in booking pictures for the Sumner and Puyallup theaters; provided further, that the said authority hereby granted to the said Mike Barovic shall continue until the hereinafter mentioned contribution of Mike Barovic to the partnership, including interest and charges which he is required to pay in connection therewith, and also all debts of the partnership have been paid in full, and shall continue thereafter until such further time as the parties shall mutually agree to some other arrangement. . . .

"The parties shall and will at all times during the continuance of this partnership, bear, pay and discharge equally between them all rents and other expenses that may be required for the support and management of said business; and all losses that shall occur to the partnership shall be borne and paid between them in equal proportions.

"The said Mike Barovic at the time of the commencement of said partnership contributed as necessary initial capital for the partnership, in cash, partly borrowed on his own credit, approximately $25,000. It has at all times been understood and agreed, and is now understood and agreed as an essential term of this agreement, that this contribution by the said Mike Barovic, including interest and other necessary charges which the said Barovic may be obliged to pay in connection with money borrowed by him for the purpose, shall be a first and paramount charge against the gains, profits and increases of the partnership, and that neither party shall draw any money by way of salary, profits or otherwise, from the partnership, with the exception of the advances of $100 per month herein provided for, until this initial contribution by the said Barovic, including necessary interest and other charges incurred by him as aforesaid, is paid in full.

"It is further understood and agreed, as an essential term of this agreement, that if and when said initial contribution of the said Barovic is paid in full as above provided,—but not until then,—the said Pete Constanti shall thereafter share equally with the said

Mike Barovic in the assets, proceeds, gains, profits and increases of said partnership.

"Each of the parties hereto shall be entitled to receive $100 per month as an advance from the net profits of the partnership; provided, however, that if at any time there are insufficient partnership funds on hand to meet partnership expenses or liabilities, it shall be the obligation and duty of each of the partners to immediately secure and contribute to the partnership by borrowing the same if necessary, one-half of the sum required to pay such expenses or liabilities."

The contract also stated that the partnership fund should be kept in a bank, but no money should be drawn by either party for his own use except the one hundred dollars monthly salary. The last portion of the agreement provided for the sale of the interest of one to the other in the event either party desired to sell his interest in the business.

It may be noted parenthetically that, October 6, 1936, appellant and respondent entered into an agreement with John Hamrick's Tacoma Theaters, Inc., relative to the operation of the two theaters owned by the Hamrick company in Tacoma, the Riviera owned by appellant and respondent, and the Beverly owned by respondent individually. The agreement provided for the formation of a corporation to be known as "Puget Sound Theaters, Inc." The purpose of the contract was to allow the new corporation to conduct the business and operations of the four theaters in the city of Tacoma for a definite period of time.

One portion of the preamble of the contract stated:

"WHEREAS, the party of the first part is the operator of the Blue Mouse Theatre and Temple Theatre in the city of Tacoma, Washington, and the parties of the second and third part are equal owners in the operation of the Riviera Theatre in Tacoma, Washington, and the party of the third part is the operator of the Beverly Theatre in the city of Tacoma, Washington;  . . ."

After the properties were conveyed to respondent pursuant to the agreement between himself and the beneficiaries of the Constanti estate, he and appellant proceeded to conduct the business of operating the theaters. The firm name of Barovic and Constanti was used. Several exhibition film contracts formerly held by the Constanti estate were assumed by appellant and respondent. The theaters were advertised under the firm name of Constanti and Barovic. Merchandise was ordered and paid for under that firm name, and conditional sales contracts for equipment and contracts for repairs to the theaters were signed by the parties as owners of the Roxy, Liberty, and Riviera theaters. The business prospered to such an extent that, at the time the trial was concluded, a very large proportion of the original investment and sums paid for betterments had been received from the net profits.

Some time after the making of the copartnership agreement, trouble arose between appellant and respondent. Appellant refused and neglected to perform services for the business enterprise which were requested by respondent, and at various times took money from the cash registers in the theaters. The amounts were, however, charged by appellant to his account. Appellant also issued complimentary tickets, and authorized the running of a commercial slide in one of the theaters in payment of personal accounts.

In December, 1936, respondent refused to pay appellant his salary of one hundred dollars per month, named in the contract of copartnership, and this refusal continued thereafter. After several letters had been written by the parties to each other during the months of April and May, 1937, respondent refused to allow appellant to have anything to do with the affairs of the theaters, and this suit was instituted.

■ The question for determination is: Did the evidence establish a partnership between appellant and respondent?

The question of partnership depends upon the intent of the parties as manifested by their conduct, statements, and written contracts. Generally speaking, if such contracts, statements, and conduct establish an intent, and prove a common venture uniting the labor, skill, or property of the parties for the purpose of engaging in lawful commerce or business for the benefit of all of them, and an agreement to share profits and losses, a partnership is formed. *Miles Co. v. Gordon,* 8 Wash. 442, 36 Pac. 265; *Causten v. Barnette,* 49 Wash. 659, 96 Pac. 225; *Yatsuyanagi v. Shimamura,* 59 Wash. 24, 109 Pac. 282; *Oriental Realty Co. v. Taylor,* 69 Wash. 115, 124 Pac. 489; *Nicholson v. Kilbury,* 83 Wash. 196, 145 Pac. 189; *Freitag v. Lund,* 173 Wash. 589, 24 P. (2d) 60; *Barovic v. Constanti,* 183 Wash. 60, 48 P. (2d) 257.

In *Nicholson v. Kilbury, supra,* this court stated:

"There is no arbitrary rule by which it may be determined whether a partnership relation existed in a given instance or not. The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct ·of the parties. While a contract of partnership, either expressed or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory. *Bridgman v. Winsness,* 34 Utah 383, 98 Pac. 186. It is well settled that no one fact or circumstance will be taken as the con-

clusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established."

A consideration of the written contract which was signed by appellant and respondent, and termed "Articles of Copartnership," the provisions therein for the sharing of profits and losses, and the circumstances under which the contract was made, definitely evidence an intent to establish a partnership, and reflect the actual formation of a partnership. The fact that the funds advanced by respondent were to be returned to him before the proceeds of the business could be divided does not in any way detract from the force of the contract of partnership. The only effect of the provision was to give to respondent the right to have his investment returned to him before the division of any profits could begin. Nowhere in the agreement do we find any statement that the status of partnership was postponed until the payment to respondent was completed. The liquidation of respondent's initial investment in the undertaking is not in any wise a condition precedent to the genesis of the partnership relation.

The manner in which appellants and respondents conducted the theater business after it was purchased from the estate definitely substantiates and supports the provisions in the agreement which provided for the partnership.

A consideration of the evidence clearly indicates that the partners cannot continue to carry on the business in which they have been engaged, and that their interests will be best served by a dissolution of the partnership.

The judgment is reversed, with instructions to proceed with an accounting to effect the dissolution of the partnership business.

BLAKE, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.