# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JANTON CONSTRUCTION, LLC, a Washington limited liability company, | No. 57776-3-II |
| Respondents, | |
| v. | |
| ROYAL CONCENTRATES, LLC, a Washington limited liability company; ROBERT DEGIDIO and KARIN L. DEGIDIO, wife and husband and their marital community, | UNPUBLISHED OPINION |
| Appellants. | |

GLASGOW, J.—Janton Construction LLC (Janton) and its principal, Anthony Dressor, agreed to finance a cannabis-processing business, Royal Concentrates LLC, operated by Robert and Karin DeGidio.[1] In exchange, Robert DeGidio agreed to make Janton a member of Royal Concentrates LLC. DeGidio would make Janton a 30 percent owner of Royal Concentrates LLC, and Janton would receive 40 percent of the profits when the cannabis business became profitable. DeGidio also agreed to repay the money Dressor would spend on equipment, rent, and operating costs once the business became profitable. Dressor and DeGidio signed an agreement to this effect.

Janton purchased equipment, paid rent, and financed operating expenses for Royal Concentrates LLC, but DeGidio and Royal Concentrates LLC failed to pay Janton back after the business became profitable. Royal Concentrates LLC and DeGidio also failed to pay Janton 40

---

[1] We refer to Robert DeGidio as "DeGidio," and Karin DeGidio as "Karin," to avoid confusion.

percent of the profits as agreed. Janton sued DeGidio, his wife Karin and their marital community, and Royal Concentrates LLC for breach of contract, breach of fiduciary duty, and unjust enrichment.

After a bench trial, the trial court found Royal Concentrates LLC and both Robert and Karin DeGidio jointly and severally liable to Janton for breach of contract, breach of fiduciary duty, and unjust enrichment. The trial court entered a judgment against all of the defendants jointly and severally.

The DeGidios appeal, arguing that the trial court erred when it excluded exhibits as well as testimony from one witness that the DeGidios failed to disclose until just before trial. They also argue that the findings of fact and conclusions of law are insufficient to support any personal liability and breach of fiduciary duty.

We hold that any error in excluding exhibits and testimony was harmless. We also hold that Royal Concentrates LLC and both Robert and Karin DeGidio are jointly and severally liable based on breach of contract and breach of fiduciary duty in the amounts identified in the trial court's judgment. Therefore, we affirm.

FACTS

I. BACKGROUND

Anthony Dressor, Janton's principal, met Robert DeGidio while working in the construction business. DeGidio asked Dressor if he wanted to become a partner and invest in his cannabis-processing business, Royal Concentrates LLC.

Dressor and DeGidio signed an agreement where Dressor, on behalf of Janton, would buy equipment, pay rent, and pay operating costs until the business was "up and running and [could]

support itself." Ex. 1. In exchange, Janton would receive a 30 percent ownership interest in Royal Concentrates LLC, 40 percent of the profits, and repayment of Janton's expenditures for equipment, rent, and operating costs.

Soon after the parties executed the agreement, Janton began fulfilling its obligation to purchase equipment, provide a line of credit, and pay for rent, utilities, license fees, security, and internet. In time, the business started processing cannabis, creating packaging for the goods, and getting product ready for distribution.

Dressor eventually noticed that product was being stockpiled and not being sold. He asked for financial records of Royal Concentrates LLC. Karin was involved in managing the bank accounts for the LLC. The DeGidios refused to give Dressor access to the records, and Dressor refused to continue funding the business indefinitely while unsold product, that seemed capable of sustaining the business, built up. After a heated meeting, the DeGidios locked Dressor out of the business, the two parties clashed about possession of equipment bought for the business, and the parties stopped working together. DeGidio never fulfilled his obligation to make Janton a member of Royal Concentrates LLC.

After the parties stopped working together, the DeGidios refused to return the equipment Janton purchased or pay back Janton for the amounts expended on equipment, rent, and operating expenses. In the meantime, the DeGidios had been generating profit from another limited liability company called Prime Time Ventures N.C. LLC (Prime Time Ventures), doing business as Royal Concentrates. Instead of applying for a cannabis processing license on behalf of Royal Concentrates LLC, the DeGidios had applied for a license for Prime Time Ventures during the

3

same time period. Despite operating a profitable cannabis business under the Royal Concentrates name, the DeGidios did not pay Janton 40 percent of the profits.

Janton sued DeGidio, his wife Karin, their marital community, and Royal Concentrates LLC for breach of contract, breach of fiduciary duty, and unjust enrichment. The DeGidios made several counterclaims. Janton later filed an amended complaint adding a fraud claim.

## II. UNTIMELY DISCLOSURE OF EVIDENCE AND WITNESSES

Janton filed its original complaint against the defendants on July 22, 2021. The initial deadline for defendants' disclosure of primary witnesses was February 10, 2022, with rebuttal witnesses required by March 31, 2022. The discovery cutoff was set for June 2, 2022.

The defendants failed to disclose any witnesses. In June, the trial date was moved from July 2022 to November 28, 2022. The new deadline for the defendants' disclosure of primary witnesses was July 20, 2022. The DeGidios failed again to disclose any primary witnesses before this deadline.

On November 10, 2022, a little more than two weeks before trial, the DeGidios, whose attorney had withdrawn, disclosed their third-party bookkeeper as a potential witness who could speak to the financial state of Royal Concentrates LLC. The DeGidios also submitted a list of documents they planned to present as exhibits at trial. Janton filed a motion to exclude all late disclosed witnesses and exhibits. The DeGidios did not provide a written response or opposition to the motion to exclude.

On the morning of the bench trial, the trial court heard oral arguments about the motion to exclude. Janton's counsel argued that he had attempted to contact the bookkeeper at the end of September because DeGidio had signed a release allowing Janton to access Royal Concentrates

LLC's financial records. However, he received no response or documents from the bookkeeper. Janton's counsel argued that the late disclosure of records made him unable to adequately prepare for trial.

DeGidio responded that the bookkeeper did not receive any communications from Janton's counsel initially, and she only found one e-mail in her junk folder promising a forthcoming letter she never received. DeGidio argued that the financial documents were important evidence, despite his mistake as an unrepresented litigant in missing the procedural deadlines for submitting the documents.

The trial court explained that unrepresented litigants are still held to the same standard for procedural deadlines because these deadlines are an important way to ensure all parties have time to adequately prepare for trial and to avoid disadvantaging the other party with a late disclosure. While recognizing that exclusion may seem harsh, the trial court excluded the records and the bookkeeper's testimony. The trial court reasoned that disclosing documents and a witness on the day of trial did not give Janton the opportunity to prepare or depose the proposed witness. The trial court further remarked that the late disclosure occurred despite a months-long delay in the trial date, during which the defendants still failed to provide a list of witnesses and exhibits to Janton. Finally, the trial court noted that the DeGidios could refer to or use exhibits that Janton had submitted, and the DeGidios' documents could still be offered for impeachment purposes if necessary.

During trial, the court nevertheless considered several exhibits that DeGidio offered during his own testimony. The parties discovered that some of the proposed exhibits were duplicates of exhibits already admitted during the plaintiffs' presentation of their case. The court admitted at

least one of the DeGidios' proposed exhibits and it considered others as illustrative exhibits or for limited purposes. And the court determined that one of the DeGidios' offered exhibits was inadmissible hearsay and excluded it on that basis in addition to noting its late disclosure. Finally, the trial court explained the DeGidios could still testify about the finances of Royal Concentrates LLC without relying on exhibits.

### III. TRIAL COURT'S FINDINGS AND CONCLUSIONS

After completion of the bench trial, the trial court entered written findings of fact and conclusions of law, along with a judgment and order. The trial court found that DeGidio approached Dressor about the partnership, represented that he had considerable expertise and knowledge about the cannabis business, provided a spreadsheet of anticipated profits, and offered a series of benefits to induce Janton to invest in Royal Concentrates LLC. DeGidio and Dressor executed a written agreement establishing that in exchange for purchasing equipment, paying rent, paying initial operating expenses, and extending a line of credit to Royal Concentrates LLC, Janton would have a 30 percent interest in Royal Concentrates LLC and would receive 40 percent of the profits. DeGidio and Dressor also agreed that Dressor would be reimbursed for the amount he would spend on equipment, rent, and operating expenses.

The trial court found Janton performed its contractual obligations as described above, including payment for equipment, payment for rent on the commercial space, and the opening of a line of credit for operating expenses like employee payroll. The court found that the DeGidios agreed Royal Concentrates LLC would not take ownership of the equipment that Janton purchased until a certain amount of money was repaid, and that Royal Concentrates LLC would repay the

line of credit once the business was profitable. The trial court also found that Dressor requested Royal Concentrates LLC's financial reports and records, but DeGidio refused to provide them.

The trial court found the DeGidios never applied for a cannabis processing license on behalf of Royal Concentrates LLC as the agreement required. Instead, Prime Time Ventures (doing business as Royal Concentrates), whose sole member was DeGidio, applied for and obtained a cannabis processing license and a business license as a marijuana processor. Prime Time Ventures was profitable, generating over $892,000 of gross revenue between April 2020 and November 2021.

Despite this success, the trial court found that the DeGidios and Royal Concentrates LLC did not pay Janton its share of the profits and did not repay Janton for money spent on equipment, rent, or operating expenses. The trial court found only DeGidio signed an operating agreement for Royal Concentrates LLC, with no evidence of an agreement executed by all members. Janton therefore was not added as a member of Royal Concentrates LLC as required under the contract.

The trial court found that when pressed, DeGidio refused to return the equipment Janton purchased. The trial court found DeGidio failed to refund operating expenses, perform contractual and other obligations, and formally make Janton a member of Royal Concentrates LLC or a business partner. DeGidio also failed to secure a cannabis processing license for Royal Concentrates LLC, the entity in which Janton should have had an interest.

The trial court found that Dressor believed and relied on DeGidio's false representations as inducements to invest in Royal Concentrates LLC. Finally, the trial court found that DeGidio took steps to keep Janton and Dressor out of the business. DeGidio's breach of the parties'

agreement and the fiduciary duties owed to Janton cost Janton a significant amount, including attorney fees.

The trial court also entered multiple conclusions of law. The trial court concluded that Royal Concentrates LLC and its members breached a partnership agreement with Janton and breached their fiduciary duty to Janton by failing to pay Janton 40 percent of profits and failing to pay back the funds Janton spent on equipment, rent, and operating costs. Furthermore, the trial court concluded that the defendants unjustly benefited from Janton's purchase of equipment, payment of rent, and contribution of funds. The trial court concluded that retaining this benefit would be unjust without paying Janton its 40 percent of profits to date. But the trial court concluded that Janton failed to prove DeGidio defrauded Janton.

The trial court concluded that all of the defendants' counterclaims failed. The trial court determined Janton was entitled to $92,660.01 as reimbursement for equipment, rent, and other operating expenses. Janton was also entitled to $217,651.66, amounting to 40 percent of Prime Time Ventures' net profits with interest, and statutory attorney fees and costs under RCW 4.84.010.

The trial court also entered an order and judgment: it listed the DeGidios and Royal Concentrates LLC as debtors, ordered that Janton was entitled to the damages stated above plus prejudgment interest, and ordered that the defendants were jointly and severally liable for the damages. In its oral ruling, the trial court further explained that joint and several liability was appropriate, even though an LLC was involved that might otherwise protect the DeGidios from personal liability, because DeGidio signed the agreement with Dressor personally, with nothing suggesting he was acting on behalf of Royal Concentrates LLC rather than in his individual

8

capacity. The concept of piercing the corporate veil was not mentioned in the trial court's oral ruling, nor was it mentioned in the trial court's findings and conclusions.

The DeGidios and Royal Concentrates LLC appeal. They do not specifically assign error to any of the trial court's numbered findings of fact.

ANALYSIS

I. EXCLUSION OF THE DEGIDIOS' PROPOSED EXHIBITS AND ONE WITNESS

The trial court excluded the DeGidios' exhibits and the testimony of their bookkeeper because they failed to disclose them until the day of trial. The DeGidios contend that before a trial court can impose a harsh sanction, like exclusion of evidence under CR 37 for failure to meet discovery deadlines, the court must first consider the three factors recited in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). Specifically, the DeGidios contend that "the trial court must make express findings regarding the *Burnet* factors on the record at the time the sanction is imposed." Appellants' Opening Br. at 14 (emphasis omitted).

The DeGidios argue that the trial court failed to explicitly consider the *Burnet* factors before granting Janton's motion to exclude Royal Concentrates LLC's financial documents and the DeGidios' primary witness, a bookkeeper. The DeGidios further contend that if the factors had been considered, the trial court would have found a lack of willfulness; Janton was aware of the potential witness and thus would not have been prejudiced; and a lesser sanction (like continuing the trial) would have been sufficient.

In response, Janton contends that a trial court does not need to cite *Burnet* by name to satisfy the requirement to discuss its factors. Janton argues that the trial court substantively addressed the *Burnet* factors by explaining how the DeGidios failed to respond to Janton's request

for information about the bookkeeper and the financial documents and how admission of this evidence would prejudice Janton because Janton did not have an opportunity to fully review the documents or depose the bookkeeper prior to trial. Janton also contends that exclusion of the witness and evidence was ultimately harmless because the DeGidios provided no offer of proof to establish that the bookkeeper had financial knowledge about Royal Concentrates LLC that the DeGidios themselves did not also have. The DeGidios ultimately testified in trial about the financial condition of Royal Concentrates LLC, and the trial judge allowed the DeGidios to use some of their proposed exhibits during their testimony and for impeachment purposes.

Although we agree with the DeGidios that at least one *Burnet* factor was not satisfactorily considered on the record, we agree with Janton that the error was ultimately harmless.

A.    *Burnet* Factors

The trial court has broad discretion to impose sanctions for violations of discovery orders. *Burnet*, 131 Wn.2d at 494. However, before imposing the "'harsher remedies'" for violations of discovery orders, the trial court must explicitly consider the *Burnet* factors. *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013) (internal quotation marks omitted) (quoting *Burnet*, 131 Wn.2d at 494). These factors ask whether a lesser sanction would probably suffice, whether the violation at issue was willful or deliberate, and whether the violation "substantially prejudiced the opponent's ability to prepare for trial." *Burnet*, 131 Wn.2d at 494.

Courts have previously determined that exclusion of a witness for untimely disclosure is a harsh remedy that requires consideration of the *Burnet* factors before it is imposed. *Jones*, 179 Wn.2d at 343 (presuming that "late-disclosed testimony will be admitted absent a willful violation, substantial prejudice to the nonviolating party, and the insufficiency of sanctions less drastic than

exclusion"); *see also Magaña v. Hyundai Motor America*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009) (applying *Burnet* where a party failed to respond to discovery requests).

The trial court must make findings regarding the *Burnet* factors on the record, either orally or in writing. *Teter v. Deck*, 174 Wn.2d 207, 217, 274 P.3d 336 (2012). However, the trial court may conduct a satisfactory *Burnet* analysis without citing the case name as long as the factors are substantively considered. *Jones*, 179 Wn.2d at 344. Failure to consider the *Burnet* factors where a *Burnet* analysis is required is an abuse of discretion. *Blair v. TA-Seattle East No. 176*, 171 Wn.2d 342, 348-49, 254 P.3d 797 (2011).

When a trial court fails to consider the *Burnet* factors, the appellate court may not substitute its own analysis of the facts and the *Burnet* factors to cure the trial court's error. *Id.* at 351 (rejecting the premise that the appellate court may "consider the facts in the first instance as a substitute for the trial court findings").

B.      The Trial Court Failed to Expressly Consider Lesser Alternatives

All three *Burnet* factors must be considered on the record. *See Jones*, 179 Wn.2d at 344 (finding error where the trial court only considered one *Burnet* factor). Here, the trial court failed to expressly consider whether lesser alternatives to exclusion would have sufficed.

A "court should impose the least severe sanction that will be adequate to serve the purpose of the particular sanction" while still protecting the discovery process and the other party involved. *Burnet*, 131 Wn.2d at 495-96 (identifying that sanctions can serve the purposes of deterrence, punishment, compensation, education, and preventing the wrongdoer from profiting from their wrong). The trial court should explain why a lesser sanction, like a continuance or monetary penalty, would not sufficiently satisfy the purpose of the sanction. *See In re Dependency of M.P.*,

185 Wn. App. 108, 117-18, 340 P.3d 908 (2014) (holding that the lesser sanctions factor was not satisfied when the trial judge did not adequately explain why lesser sanctions like continuing the trial or attorney fees would fail to serve the deterrent and other purposes of a sanction); *see also Peterson v. Cuff,* 72 Wn. App. 596, 602, 865 P.2d 555 (1994) (finding that the lesser sanctions factor was satisfied when the trial court gave the plaintiff an additional chance to appear for a deposition before ultimately dismissing the plaintiff's complaint with prejudice).

Here, although Janton argued the *Burnet* factors in its motion to exclude the bookkeeper and the defendants' exhibits, the trial court did not explicitly mention the *Burnet* factors in its oral ruling or its written order. And there is no discussion in the record to suggest that the trial court explicitly considered whether any lesser sanctions—like a continuance, monetary sanctions, or attorney fees—would still serve the purposes of discovery enforcement. Instead, like the trial court in *M.P.*, the trial court here explained that Janton would be prejudiced if the bookkeeper were to testify and exhibits were admitted, but it then failed to articulate why a lesser sanction, like a continuance, would not serve as a sufficient remedy to this prejudice.

Instead of expressly considering lesser sanctions, the trial court took time to clarify the limitations of the exclusions. For example, the trial court explained that exclusion of the exhibits did not prohibit the DeGidios from using the exhibits for impeachment purposes, and that exclusion of the bookkeeper did not prohibit the DeGidios themselves from testifying about what they knew of Royal Concentrates LLC's finances. However, the trial court did not offer these options as lesser sanctions, but as clarifications about the scope of the court's exclusion to unrepresented defendants. Although helpful information, this was not enough to satisfy the

requirement that a trial court consider lesser sanctions before excluding evidence and witnesses. Therefore, the trial court failed to satisfy the lesser sanctions factor as required under *Burnet*.

C.      Harmless Error

The trial court's exclusion of the witness and exhibits is nevertheless subject to a harmless error analysis. *Jones*, 179 Wn.2d at 355-56; *Lavington v. Hillier*, 22 Wn. App. 2d 134, 148, 510 P.3d 373 (2022), *review denied*, 200 Wn.2d 1010, 518 P.3d 212. "Under the harmless error test in civil cases, an error is harmless when it does not materially affect the outcome of the trial." *Lavington*, 22 Wn. App. 2d at 148.

Excluded testimony fails to materially affect the outcome of the trial when it is irrelevant, unfairly prejudicial, or cumulative. *Jones*, 179 Wn.2d at 356-60. For example, in *Jones*, the court found that excluded witnesses would have provided cumulative testimony because other witnesses had already testified about some of the same topics, and others had already been excluded as irrelevant. *Id.* at 360. Therefore, the court found exclusion of the witnesses was ultimately harmless. *Id.*

Here, the trial court's *Burnet* error was ultimately harmless because the excluded exhibits and the excluded testimony of the bookkeeper were either cumulative or the DeGidios have not explained how they would have changed the outcome.

When describing the financial documents, the DeGidios stated that the documents concerned profit and loss and contained information from their tracking system about gross sales that could be used to counter financial information provided by Janton. Most of the DeGidios' documents and the contents they covered were ultimately introduced into evidence either through Janton's own exhibits or during the DeGidios' case-in-chief. For example, Janton introduced the

DeGidios' sales reports into evidence. Janton also ultimately based its calculation of profits on an exhibit that compiled financial information from the DeGidios' financial documents along with information from one of Janton's own exhibits. Further, at the beginning of the DeGidios' case-in-chief, the trial court found that some of the DeGidios' exhibits were duplicative of exhibits already in the record. The trial court considered a few more of the non-duplicative exhibits for illustrative or other specific purposes.

The trial court ultimately excluded Royal Concentrates LLC's balance sheets, a "product of [the DeGidios'] bookkeeper." Verbatim Rep. of Proc. (VRP) at 391. The trial court excluded this document as hearsay and as prejudicial to Janton, because Janton was prevented from seeing the underlying financial information supporting the balance sheets due to the DeGidios' failure to respond to Janton's discovery request.

However, the trial court emphasized that the DeGidios could still testify about the information contained in Royal Concentrates LLC's balance sheets. And during the trial, the DeGidios did testify about the financial health of Royal Concentrates LLC. Karin testified that she worked closely with the bookkeeper and that her role involved "[l]ooking at the banking daily online, making sure all the bills were paid," and managing check writing. VRP at 446. Although Karin testified that the bookkeeper was the one who handled the books, Karin was still able to testify about the financial health of Royal Concentrates LLC, stating that Royal Concentrates LLC was "never doing well" and that the DeGidios "had to put a lot of [their] own funds into it." VRP at 446-47.

DeGidio also used exhibits, both illustrative and substantive, offered by both Janton and the DeGidios to testify about the finances of Royal Concentrates LLC. For example, DeGidio

identified periods of time when Royal Concentrates LLC was not licensed and thus, in his opinion, was not making any profits despite what the graph in the exhibit may have indicated. DeGidio also testified about toll processing, a type of buyback program that he believed was not reflected in the current exhibits about Royal Concentrates LLC's finances.

Thus, like in *Jones*, where the excluded witnesses would have only provided cumulative information that was already covered by the other witnesses, the DeGidios have failed to identify exactly what the bookkeeper would have testified about that was not already covered in other testimony or in the admitted exhibits. Additionally, the DeGidios made no offer of proof to establish that the bookkeeper had any expertise or qualifications beyond what the DeGidios could provide. Finally, because the trial court admitted many of the originally excluded exhibits for some purpose, and because the DeGidios have not specifically identified on appeal which exclusions were prejudicial, we conclude that the trial court's failure to address one of the *Burnet* factors was harmless.

## II. PERSONAL LIABILITY

The DeGidios contend that the trial court erred by failing to provide sufficient findings of fact or conclusions of law supporting personal liability for the DeGidios. In particular, the DeGidios contend that Royal Concentrates LLC was the entity involved in an agreement with Janton, not the DeGidios personally. Thus, the DeGidios argue that to hold them personally liable for the obligations of the company, the trial court needed to determine whether the corporate veil could be pierced. The DeGidios conclude that because the trial court did not make any findings of fact or conclusions of law about piercing the veil, they should not be personally liable.

15

In response, Janton contends that this case was never about piercing the veil. Instead, Janton always argued that the trial court could hold the DeGidios and Royal Concentrates LLC jointly and severally liable. Janton argues that the record contains a contract DeGidio entered into personally and then failed to perform. We agree with Janton.

A.     Piercing the Corporate Veil

When an LLC itself incurs debts, obligations, or liabilities, the members of the LLC are not usually personally liable when they have done nothing more than exist as members. *See* RCW 25.15.126(1). However, a court may use the equitable doctrine of piercing the corporate veil to hold a member personally liable if allowing liability only for the business entity would "aid in perpetrating a fraud or result in a manifest injustice." *E.g.*, *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 644, 618 P.2d 1017 (1980).

However, there are other legal bases for finding a member of an LLC personally liable. For example, a member or manager of an LLC is still personally liable for their own torts. RCW 25.15.126(3). The same is true for partners in a partnership: partners are also personally liable for their own tortious acts. *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 499, 145 P.3d 1196 (2006). Additionally, a partner may bring an action against another partner for breach of a duty to the partnership or breach of the partnership agreement itself. RCW 25.05.170(2).

This case is like *Parrott Mechanical, Inc. v. Rude*, 118 Wn. App. 859, 78 P.3d 1026 (2003). In *Parrott*, the Rudes argued that the trial court improperly pierced the veil to hold them personally liable for failure to pay invoices for construction labor and materials per existing contracts. *Id.* at 862-63, 867. However, Division Three held that there was no evidence in the record to suggest that the trial court considered a theory of piercing the veil. *Id.* at 867-68. Instead, the court held

16

that in the trial court proceedings, Parrott Mechanical "sought judgment from the Rudes individually, as well as from their corporate entities, and set forth its grounds for doing so." *Id.* at 867.

The summons and complaint named the Rudes individually. *Id.* Parrott Mechanical alleged that the Rudes acted as officers of their business entity, as well as "individuals and as a marital community." *Id.* The pleadings contained allegations, causes of action, and prayers for relief against the Rudes personally, focusing on how they breached their fiduciary duties and obligations to Parrott under their shared agreement. *Id.* Overall, "it was plain from the evidence and the argument throughout that Parrott asserted a cause of action against the Rudes individually," and the trial court found the Rudes jointly and severally liable. *Id.* at 868. Thus, Division Three rejected the argument on appeal that the trial court improperly pierced the corporate veil. *Id.*

B.      Personal Liability Independent of Piercing the Veil

Here, the trial court held the DeGidios jointly and severally liable, along with Royal Concentrates LLC, based on their personal actions, not based on piercing the veil. Thus, we reject the DeGidios' claim of inadequate findings of fact or conclusions of law.

First, just like the Rudes in *Parrott*, Janton also sued the DeGidios personally. Janton's summons and amended complaint both identify the DeGidios and their marital community as individual defendants, in addition to the LLC. The amended complaint also states that "all actions done by either of [the DeGidios were] for the benefit of themselves and for their marital community," as opposed to for the benefit of, or on behalf of, the LLC. Clerk's Papers (CP) at 673. For example, the amended complaint states that DeGidio personally agreed to the division of the profits and the ownership interest, and then he failed to pay the agreed upon profits. Karin was

involved in Royal Concentrates LLC's finances, she was aware of the financial condition of the business, and she did not deny knowledge of the promises DeGidio made to Janton, and she would have been aware of the failure to honor the agreement. Furthermore, Janton's prayer for relief separately identified bases for judgment against the DeGidios versus bases for judgment against Royal Concentrates LLC.

Just like in *Parrott*, nothing in the trial court's findings of fact, conclusions of law, nor judgment and order suggests that the trial court considered the doctrine of piercing the corporate veil. The trial court's findings of fact focused on actions taken by DeGidio personally, including signing an agreement with Dressor in his personal capacity and promising Dressor a certain ownership percentage and profit interest in Royal Concentrates LLC, for example. The trial court's judgment and order clearly identify the DeGidios and their marital community as individual judgment debtors in addition to Royal Concentrates LLC. The order then explicitly states that the DeGidios and Royal Concentrates LCC are jointly and severally liable for the judgment amount.[2]

In sum, the record does not support the DeGidios' contention that piercing the corporate veil was implicated. The DeGidios' claim of inadequate findings and conclusions fails.

### III. BREACH OF FIDUCIARY DUTY

The DeGidios contend that although the trial court's conclusion of law states that the DeGidios breached their fiduciary duty, the findings of fact do not support that conclusion. In particular, the DeGidios argue that the laws governing fiduciary duties in partnerships and LLCs

---

[2] We note that the DiGidios' arguments against personal liability focus on the couple and their marital community; neither DeGidio nor Karin argues that there was insufficient evidence to support personal liability for them separately from the other. Appellants' Opening Br. at 18-22.

provide for limited fiduciary duties, none of which are specifically mentioned in the trial court's findings of fact and conclusions of law.

In response, Janton contends that the DeGidios owed several fiduciary duties. First, Janton argues that the DeGidios had a duty to account to the partnership for profit and loss information, and they breached that duty by failing to provide the requested financial records when Janton asked for them. Janton also argues that the trial court's findings that the DeGidios made false representations and refused to return Janton's equipment support its conclusion that the DeGidios violated the duty of good faith and fair dealing. Further, Janton argues that the failure to make Janton an official member of the LLC does not negate the DeGidios' fiduciary obligations because partnership duties may arise without formal agreement.

Janton also contends that in general, the appellants' brief does not challenge any specific finding of fact or conclusion of law and thus the findings are verities on appeal and the conclusions are the law of the case. The DeGidios reply that RAP 10.3(g) preserves a claimed error that is not specifically asserted in the assignments of error as long as it is clear what is being challenged. Here, that is the trial court's finding of personal liability for breach of fiduciary duty.

We hold that the DeGidios breached their fiduciary duty to Janton.

A.      Standard of Review

"When the trial court has weighed the evidence, our review is limited to determining whether the court's findings are supported by substantial evidence and, if so, whether the findings support the court's conclusions of law and judgment." *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). The substantial evidence standard requires "a sufficient quantum of evidence in the record to persuade a reasonable person

that the declared premise is true." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Conclusions of law, as well as the application of the law to the facts, are reviewed de novo. *See In re Est. of Jones*, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004); *Tapper v. Emp. Sec. Dep't.*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993).

B.      Findings of Fact

"On review, unchallenged findings of fact are verities on appeal." *Est. of Jones*, 152 Wn.2d at 8. To properly challenge a finding of fact, RAP 10.3 requires the party's brief to "present the court with argument as to why specific findings of the trial court are not supported by the evidence and to cite to the record to support that argument." *In re Est. of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (holding that the party had failed to properly challenge the trial court's findings when the party's brief barely mentioned findings of fact by number, rarely cited to the record, and largely consisted of reciting the party's version of the facts).

Similar to the brief in *Lint*, the section of the DeGidios' brief concerning breach of fiduciary duty does not mention any finding of fact by number and only cites to the record once. The one finding of fact that is identified with a page number from the record is not challenged by the appellants as unsupported by the evidence, but instead, on its inability to support the conclusion that a fiduciary duty exists.

Because no specific findings are challenged, we consider the findings of fact verities on appeal, and we focus on whether the findings of fact support the trial court's conclusions of law.

C.      Existence of a Fiduciary Duty

To support a claim of breach of fiduciary duty, the plaintiff must establish (1) that a duty is owed to them; (2) that the duty was breached; (3) that an injury resulted; and (4) that the breach

was the proximate cause of the injury. *Miller v. U.S. Bank of Wash., NA.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994). In their brief, the DeGidios only challenge the establishment of the first two elements concerning the existence of a fiduciary duty and its breach.

Members of an LLC owe fiduciary duties of loyalty and care to the LLC and its members, but not to nonmembers. RCW 25.15.038(1). Here, the trial court found that Dressor, on behalf of Janton, was meant to acquire an interest in Royal Concentrates LLC and become a member. However, the trial court also found that DeGidio never took the necessary steps to make Janton a member of Royal Concentrates LLC.

But the trial court specifically found that Dressor, on behalf of Janton, entered into a "Partnership Agreement" with DeGidio. CP at 851. Partners in a partnership are also "accountable to each other and the partnership as fiduciaries." *RSD AAP, LLC v. Alyeska Ocean, Inc.*, 190 Wn. App. 305, 319, 358 P.3d 483 (2015). Under RCW 25.05.165, partners owe each other and the partnership duties of loyalty and care, as well as an obligation of good faith and fair dealing.

Here, the findings of fact support the conclusion of law that the DeGidios owed fiduciary duties to Janton because the DeGidios and Janton entered into an agreement that established a partnership.

A "partnership" is an "association of two or more persons to carry on as co-owners a business for profit," regardless of stated intent to form a partnership. RCW 25.05.005(6). Intent to form a partnership can be inferred from the conduct of the parties when it appears that they are combining their "'property, labor, skill, and experience'" for a joint venture where the profits are shared. *In re Est. of Thornton*, 81 Wn.2d 72, 79, 499 P.2d 864 (1972) (quoting *Nicholson v. Kilbury*, 83 Wn. 196, 202, 145 P. 189 (1915)); *see also Oriental Realty Co. v. Taylor*, 69 Wn. 115,

116-17, 120, 124 P. 489 (1912) (holding that a partnership existed where one party agreed to provide money, the other party largely provided business management, and the two split profits after a return of the initial investment).

Here, the parties engaged in activities to promote the joint business venture. The trial court found that Janton agreed to buy equipment and contribute working capital to Royal Concentrates LLC in return for a 30 percent interest in Royal Concentrates LLC and 40 percent of the profits. The trial court also found that Mr. DeGidio would contribute his business expertise and ability to generate profit to the partnership.

Therefore, the findings of fact support a conclusion that the DeGidios owed fiduciary duties to Janton based on the existence of a partnership.

D.      Breach of Fiduciary Duty

RCW 25.05.165 provides the standards fiduciary duties partners owe to each other. First, partners owe a duty of care, defined as "refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law" during the conduct of the partnership. RCW 25.05.165(3).

Second, partners owe a duty of loyalty, which requires partners to "account to the partnership" and hold as a trustee any property, profit, or benefit that the partner derived from the conduct of the business; to refrain from dealing with the partnership on behalf of a party with an adverse interest; and to "refrain from competing with the partnership in the conduct of the partnership business." RCW 25.05.165(2)(a)-(c); *see also Bishop of Victoria Corp. Sole v. Corp. Bus. Park, LLC*, 138 Wn. App. 443, 457, 158 P.3d 1183 (2007) (stating that partners owe a duty of loyalty to avoid conflicts of interest, such as competing with the partnership).

22

Although a partner is not prohibited from furthering their own interests by using their individual funds during the partnership, the duty of loyalty and good faith prevents partners from profiting individually using partnership business or funds, or profiting from a business opportunity that should have belonged to the partnership. *See In re Est. of Wilson*, 50 Wn.2d 840, 846-47, 315 P.2d 287 (1957). In *Estate of Wilson*, the court held that a breach of fiduciary duty occurred when two partners purchased property with partnership funds instead of their personal funds without informing the other partners. *See* 50 Wn.2d at 847. Additionally, this purchase was injurious to the partnership because it cost the partnership funds to buy and to operate, while the partners (but not the partnership) benefited in earnings from the property. *Id.*; *see also J&J Celcom v. AT&T Wireless Servs. Inc.*, 162 Wn.2d 102, 107, 169 P.3d 823 (2007) (noting that "a partner has a duty to account for any benefit of profit held by the partner relating to any aspect of the partnership").

Here, the trial court concluded that the DeGidios breached their fiduciary duty to Janton. There are several findings of fact that support this conclusion. For example, the trial court found that Janton was offered a chance to become a member of Royal Concentrates LLC, a business focused on processing cannabis for sale to retailers. Janton performed its obligations under the agreement by purchasing equipment for Royal Concentrates LLC and paying for rent, utilities, security, internet, and licensing fees. Despite Janton's investments into the partnership, including the cost of licensing fees, the DeGidios never applied for a cannabis processing license for Royal Concentrates LLC. The trial court found that Mr. DeGidio instead applied for, and obtained, a cannabis license on behalf of another LLC that he was the sole member of, Prime Time Ventures, doing business as Royal Concentrates. Prime Time Ventures was licensed to operate as a marijuana processor and generated over $892,000 in gross revenue in just over a year.

23

By taking the money and equipment Janton invested into the partnership on behalf of Royal Concentrates LLC and using it to benefit a different cannabis-focused LLC, the DeGidios violated the duty of loyalty by competing with the partnership and by representing an interest adverse to that of the business. After all, testimony in the record stated that a cannabis license could take six months to a year to acquire for a new business, so it may not have been an easy feat to get a second license for Royal Concentrates LLC. Therefore, these findings serve as a basis for the conclusion of law that there was a breach of fiduciary duty.

Second, like the partners in *Estate of Wilson*, the DeGidios also violated the duty of loyalty by failing to act as trustees of the partnership's property and profits. The DeGidios used partnership funds to purchase the cannabis licensing fee for Prime Time Ventures instead of Royal Concentrates LLC. Indeed, the cannabis license resulted in profits for Prime Time Ventures, while at the same time, the DeGidios were refusing to pay Janton back for its financial investment. Thus, by using the partnership's property and funds in a way that injured the partnership and their partner while benefiting themselves, the DeGidios violated the fiduciary duty of loyalty.

Therefore, the findings of fact support a conclusion that the DeGidios breached their fiduciary duty to Janton.

CONCLUSION

Any error in excluding evidence was harmless. Robert and Karin DeGidio and Royal Concentrates LLC are jointly and severally liable based on breach of contract and breach of fiduciary duty in the amounts identified in the trial court's judgment. Therefore, we affirm the trial court's findings and conclusions, as well as its judgment.

24

No. 57776-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
GLASGOW, J.

We concur:

_____
CRUSER, C.J.

_____
CHE, J.